Robert G. Loewy, State Bar No. 179868
  rloewy@rloewy.com
**Law Office of Robert G. Loewy, P.C**.
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Tel: 949-468-7150
Fax: 949-242-5105

Attorney for Plaintiffs and the Proposed Classes

*(Additional Attorneys Listed on Signature Page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK D. ALTIER, WILLIAM BAERRESEN, ERIC FISHON, DRAGAN JAGNJIC, CYNTHIA SACCHETTI, JACQUELINE SANTOS-SILVA, AND AMANDA SWANSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZF-TRW AUTOMOTIVE HOLDINGS CORP., TRW AUTOMOTIVE U.S. LLC, AMERICAN HONDA MOTOR CO., INC., HONDA OF AMERICA MFG., INC., HONDA MOTOR CO. LTD., HONDA R&D AMERICAS, INC., HYUNDAI MOTOR GROUP, HYUNDAI MOTOR CO., HYUNDAI MOBIS CO. LTD., HYUNDAI MOTOR AMERICA, INC., KIA MOTORS CORP., KIA MOTORS AMERICA, INC., FCA US LLC, TOYOTA MOTOR NORTH AMERICA, INC.,  TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,<br><br>Defendants. | Civil Action No._____<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against TRW Defendants and the Hyundai/Kia Defendants;<br>(2) Violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and Corrupt Organizations Act against TRW Defendants and the Hyundai/Kia Defendants;<br>(3) Violation of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et seq.* against all Defendants;<br>(4) Fraud by Omission or Fraudulent Concealment against the TRW Defendants;<br>(5) Fraud by Omission or Fraudulent Concealment against the Vehicle Manufacturer Defendants;<br>(6) Unjust Enrichment against the Vehicle Manufacturer Defendants;<br>(7) Violation of the Song-Beverly Consumer Warranty Act for Breach of the Implied Warranty of Merchantability, Cal. Civ. Code §§ 1791.1 & 1792, against all |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants;

(8)   California Breach of Express Warranty, Cal. Com. Code §§ 2313 and 10210, against the Vehicle Manufacturer Defendants;

(9)   Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* against all Defendants;

(10)  Violation of Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* against all Defendants;

(11)  Illinois Consumer Fraud and Deceptive Business Practices 815 Ill. Comp. Stat. § 505/1, *et seq.* against all Defendants;

(12)  Illinois Breach of Implied Warranty of Merchantability, 810 Ill. Comp. Stat. §§ 5/2-314, 5/2-315, and 5/2A-212 against all Defendants;

(13)  Massachusetts Breach of Implied Warranty of Merchantability, (Mass. Gen. Laws c. 106 §§ 2-314 and 2A-212), against all Defendants;

(14)  Massachusetts Breach of Express Warranty, Mass. Gen. Laws C. 106 §§ 2-313 and 2A-210 against the Vehicle Manufacturer Defendants;

(15)  Deceptive Acts or Practices Prohibited by Massachusetts Law Mass. Gen. Laws Ch. 93A, §§ 1, *et seq.* against all Defendants;

(16)  Nevada Breach of Implied Warranty of Merchantability, Nev. Rev. Stat. § 104.2314, against all Defendants;

(17)  Nevada Breach of Express Warranty, Nev. Rev. Stat. §§ 104.2313 and 104A.2210 against the Vehicle Manufacturer Defendants;

(18)  Violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*, against all Defendants;

(19)  New York Breach of Implied Warranty of Merchantability, (N.Y. U.C.C. Law §§ 2-314 and 2A-212), against all Defendants;

(20)  New York Breach of Express Warranty, N.Y. U.C.C. Law §§ 2-313 and 2A-210) against the Vehicle Manufacturer Defendants;

(21)  Violation of the New York General Business Law N.Y. Gen. Bus. Law § 349 against all Defendants;

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(22) Violation of the New York General Business Law N.Y. Gen. Bus. Law § 350 against all Defendants;

(23) Violation of the Consumer Protection Act Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*, against all Defendants;

(24) Breach of Express Warranty Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210; against the Vehicle Manufacturer Defendants.

**DEMAND FOR JURY TRIAL**

1

**<u>TABLE OF CONTENTS</u>**

2

I.     INTRODUCTION ........................................................................... 1

II.    JURISDICTION AND VENUE ...................................................... 6

III.   PARTIES ........................................................................................ 7

       A.    Plaintiff ............................................................................ 7

       B.    ACU Manufacturer Defendants ....................................... 8

       C.    Vehicle Manufacturer Defendants ................................... 8

IV.   FACTUAL ALLEGATIONS ......................................................... 12

       A.    The Class Vehicles ......................................................... 12

       B.    The ACU Defect ............................................................. 13

       C.    Defendants' Knowledge of the ACU Defect and
           Associated Safety Risks ................................................. 18

V.    TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL ........ 22

VI.   CLASS ACTION ALLEGATIONS ............................................... 23

VII.  CLAIMS FOR RELIEF ................................................................. 29

VIII. PRAYER FOR RELIEF ................................................................ 110

IX.   DEMAND FOR JURY TRIAL ...................................................... 111

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.    INTRODUCTION

1.    Airbags are a critical safety component in virtually every motor vehicle sold in the United States and throughout the world.   Drivers and passengers reasonably expect that airbags will properly deploy if their vehicles are involved in an accident.   When functioning properly, an airbag can mean the difference between life and death.

2.    This action concerns defective airbag control units (ACUs) manufactured by Defendants ZF-TRW Automotive Holdings Corp. ("ZF TRW") and TRW Automotive U.S. LLC ("TRW US") (collectively "TRW"), which are part of airbag systems equipped in vehicles manufactured by the Vehicle Manufacturer Defendants.[2]

---

[1]    Counsel's investigation includes an analysis of publicly available information, including investigations by the National Highway Traffic Safety Administration ("NHTSA"), vehicle recalls, and additional analysis.   Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

[2]    The "Vehicle Manufacturer Defendants" include: Defendant American Honda Motor Co., Inc. ("American Honda"); Defendant Honda Motor Co., Ltd. ("Honda Motor"); Defendant Honda of America Mfg., Inc. ("Honda Mfg."); Defendant Honda R&D Americas, Inc. ("Honda R&D") (Defendants American Honda, Honda Motor, Honda Mfg., and Honda R&D, are collectively referred to as "Honda" or the "Honda Defendants"), Defendant Hyundai Motor Group ("Hyundai Group"), Defendant Hyundai Motor Co. ("Hyundai Motor"), Defendant Hyundai Motor MOBIS Co. Ltd. ("Hyundai MOBIS"), Defendant Hyundai Motor America, Inc. ("Hyundai America") (Defendants Hyundai Group, Hyundai Motor, Hyundai MOBIS, and Hyundai America are collectively referred to as "Hyundai"), Defendant Kia Motors Corp. ("Kia Motors"); Defendant Kia Motors America, Inc., ("Kia America") (Defendants Kia Motors and Kia America are collectively referred to as "Kia") (Defendants Hyundai Group, Hyundai Motor, Hyundai MOBIS, Hyundai America, and Kia Motors, and Kia America are collectively referred to as the "Hyundai/Kia

1

1
2
3
4
5
6

3.      Each Class Vehicle contains one ACU.   ACUs are designed and manufactured to sense a vehicle crash, determine whether airbag deployment is necessary, and deploy appropriate airbags and other supplemental restraints where needed. The ACU contains an electronic component—an application specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the Class Vehicles.  If the ASIC fails, the ACU will not operate properly.

7
8
9
10
11
12

4.      As a result of an electrical overstress ("EOS") condition that causes the malfunction of the ASIC in the ACUs manufactured by TRW (the "ACU Defect"), the airbags equipped in the Class Vehicles (defined below) do not properly deploy during a crash. The ACU Defect exposes Plaintiffs and Class members to the serious and life-threatening safety risk that their Class Vehicle airbags or supplemental restraints could fail to deploy during an accident, resulting in injury or death.

13
14
15
16
17
18
19
20
21
22

5.      As early as August 2011, TRW and Hyundai/Kia had knowledge that there was a defect in the ACUs that could cause airbags not to deploy in the event of a collision. Specifically, TRW analyzed an ACU from a Kia Forte in China—in which the airbag did not properly deploy—and observed damage in the ASIC that was consistent with EOS.[3]  Thereafter, in March 2012, TRW analyzed another Kia Forte in which the airbags did not properly deploy and again observed that electrical overstress negatively affected the functioning of the ASIC in the ACU.[4]  TRW and Hyundai/Kia communicated about these ACU malfunctions and related investigations in 2011 and 2012.

23
24
25
26

Defendants"), FCA US LLC ("FCA"), Defendant Toyota Motor North America, Inc. ("Toyota"), Defendant Toyota Motor Sales, U.S.A., Inc., ("TMS"), Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") ( Defendants Toyota, TMS, and TEMA are collectively referred to as "Toyota" or the "Toyota Defendants").  The Vehicle Manufacturer Defendants, collectively with TRW, are referred to as "Defendants."

27

[3]      *See* Exhibit A, TRW Automotive Inc. (ZF) Chronology.

28

[4]      *See id.*

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.     From 2015 through 2018, TRW and Hyundai/Kia continued to investigate the ACU Defect, inspect additional vehicles in which airbags failed to deploy, and communicate regarding the results of their findings related to the ACU Defect.[5]

7.     Numerous personal injury and wrongful death lawsuits also have been filed against TRW and/or the Vehicle Manufacturer Defendants alleging that airbags failed to deploy in accidents as a result of the ACU Defect—providing TRW and the Vehicle Manufacturer Defendants with knowledge of the ACU Defect.  Despite knowledge of the ACU Defect, TRW has continued to manufacture and sell the defective ACUs, resulting numerous injuries and deaths.  In addition, the Vehicle Manufacturer Defendants have continued to equip the Class Vehicles with airbag systems containing the ACU Defect and sell and lease the Class Vehicles, without disclosing the ACU Defect and its corresponding safety risks to Plaintiffs and Class members.

8.     In March 2018, NHTSA's Office of Defects Investigation ("NHTSA ODI") opened a preliminary evaluation ("PE") investigation into the ACU Defect based on six frontal crashes, reported via Early Warning Reporting between 2012 and 2017, where airbags did not deploy.[6]  These crashes resulted in six injuries and four deaths.

9.     While the PE investigation focused on certain Hyundai Motor America ("Hyundai") and Kia Motors America ("Kia") vehicles containing the ACU Defect, NHTSA ODI identified ZF-TRW as the supplier of the defective ACUs, putting the Vehicle Manufacturers on notice of the ACU Defect.  NHTSA ODI described the

---

[5]     *See id.*

[6]     Exhibit B, NHTSA, ODI Resume, Investigation EA 18-003 Mar. 16, 2018, https://static.nhtsa.gov/odi/inv/2018/INOA-PE18003-9810.PDF.

CLASS ACTION COMPLAINT

ACU defect as follows: "[f]ailure of the air bag control unit may prevent the frontal air bags from deploying in the event of a crash."[7]

10.     As explained by NHTSA ODI, in February 2018, Hyundai reported that "post-collision inspections of the air bag control units (ACUs) showing that an electrical overstress condition (EOS) of an ACU electronic component occurred in three of the crashes, and that the fourth ACU is under evaluation for the same concern."[8]  Hyundai further reported that it had "not identified a remedy for this recall, and state[d] that the cause of the EOS is being investigated with the ACU supplier, ZF-TRW."[9]

11.     Thereafter, on April 19, 2019, NHTSA ODI upgraded its PE investigation into the ACU Defect to an Engineering Analysis and expanded the investigation to include TRW and the Vehicle Manufacturers, as well as certain other car manufacturers.[10]  According to NHTSA, TRW supplied the defective ACUs to Defendants Honda and Toyota as well as FCA US LLC ("FCA"), Hyundai, Kia, and Mitsubishi Motors North America, Inc. ("Mitsubishi").[11]  NTSHA ODI estimates that 12.3 million vehicles contain the ACU Defect.

12.     Plaintiffs Mark D. Altier, William Baerresen, Eric Fishon, Dragan Jagnjic, Cynthia Sacchetti, Jacqueline Santos-Silva, and Amanda Swanson, ("Plaintiffs") and members of the Classes assert claims against Defendants for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, fraudulent concealment, breach of express and implied warranties, unjust enrichment and state consumer fraud/unfair trade practices.

---

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

[10]     Exhibit C, NHTSA, ODI Resume, Investigation EA 19-001, Apr. 19, 2019, https://static.nhtsa.gov/odi/inv/2019/INOA-EA19001-2536.PDF.

[11]     *See id.*

CLASS ACTION COMPLAINT

13.     No reasonable consumer expects to purchase or lease a Class Vehicle that contains a concealed ACU Defect that subjects drivers and passengers to the safety risk that an airbag will not deploy during an accident. The ACU Defect is material to Plaintiffs and members of the Classes because when they purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from defects and contain an ACU and airbag system that properly functioned.  Had Defendants disclosed the ACU Defect, Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

14.     Indeed, Defendants knowingly, actively, and affirmatively omitted and/or concealed the existence of the ACU Defect from Plaintiffs and members of the Classes.  Knowledge and information regarding the ACU Defect and the associated safety risk was in the exclusive and superior possession of Defendants, and was not disclosed to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.  Based on pre-production testing, design failure mode analysis, wrongful death and personal injury lawsuits, post-collision inspections, vehicle owner questionnaires, and NHTSA investigations, *inter alia*, Defendants were aware of the ACU Defect and fraudulently concealed the defect from Plaintiffs and members of the Classes.

15.     Notwithstanding this knowledge, TRW continued selling defective ACUs and the Vehicle Manufacturer Defendants continued selling Class Vehicles equipped with airbag systems containing the ACU Defect.  Defendants failed to disclose the existence of the ACU Defect to Plaintiffs and members of the Classes and have not remedied the ACU Defect and/or compensated Plaintiffs or members of the Classes for this material defect.   In addition, the Vehicle Manufacturer Defendants have not issued recalls for the Class Vehicles containing the ACU Defect. Rather, Defendants wrongfully and intentionally concealed the ACU Defect from Plaintiffs and members of the Classes.

5

16.     As a direct result of Defendants' conduct, Plaintiffs and members of the Classes have been harmed and are entitled to actual damages, including damages for diagnosis, repair and/or replacement costs, damages for the diminished value of their vehicles, compensatory, statutory and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## II.     JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the state in which Defendants are citizens.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' RICO claims arise under federal law, jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367, and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

18.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendants Hyundai America and Kia America maintain their corporate headquarters in this District, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and because Defendants conduct a substantial amount of business in this District.  Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

CLASS ACTION COMPLAINT

### III.    PARTIES

#### A.    Plaintiffs

19.    Plaintiff Mark D. Altier is a citizen of the State of California and resides in San Diego, California.  In 2014, Plaintiff Altier purchased a new 2014 Toyota Tacoma in California, for personal, family, or household purposes. Plaintiff Altier's Class Vehicle is equipped with an airbag system containing the ACU Defect.

20.    Plaintiff William Baerresen is a citizen of the State of Nevada and resides in Reno, Nevada.  In 2018, Plaintiff Baerresen purchased a new 2018 Jeep Wrangler in Nevada, for personal, family, or household purposes. Plaintiff Baerresen's Class Vehicle is equipped with an airbag system containing the ACU Defect.

21.    Plaintiff Eric Fishon is a citizen of the State of New York and resides in Hauppauge, New York. In 2016, Plaintiff Fishon purchased a used 2014 Jeep Wrangler in New York, for personal, family, or household purposes. Plaintiff Fishon's Class Vehicle is equipped with an airbag system containing the ACU Defect.

22.    Plaintiff Dragan Jagnjic is a citizen of the state of Washington and resides in Renton, Washington.  In 2013, Plaintiff Jagnjic purchased a new 2013 Hyundai Sonata Hybrid, in Washington, for personal, family, or household purposes. Plaintiff Jagnjic's Class Vehicle is equipped with an airbag system containing the ACU Defect.

23.    Plaintiff Cynthia Sacchetti is a citizen of the State of California and resides in San Diego, California.  In 2018, Plaintiff Sacchetti purchased a used 2013 Honda CR-V in California, for personal, family, or household purposes.  Plaintiff Sacchetti's Class Vehicle is equipped with an airbag system containing the ACU Defect.

24.    Plaintiff Jacqueline Santos-Silva is a citizen of the State of Massachusetts and resides in Dorchester, Massachusetts.  In 2017, Plaintiff Santos-

CLASS ACTION COMPLAINT

Silva purchased a used 2014 Honda Civic in Massachusetts, for personal, family, or household purposes.  Plaintiff Santos-Silva's Class Vehicle is equipped with an airbag system containing the ACU Defect.

25.     Plaintiff Amanda Swanson is a citizen of the State of Illinois and resides in Romeoville, Illinois.  In 2017, Plaintiff Swanson purchased a new 2017 Kia Optima in Illinois, for personal, family, or household purposes.  Plaintiff Swanson's Class Vehicle is equipped with an airbag system containing the ACU Defect.

**B.     ACU Manufacturer Defendants**

26.     Defendant ZF-TRW Automotive Holdings Corp. ("ZF-TRW") is a Delaware corporation, with its corporate headquarters located in Livonia, Michigan.

27.     Defendant TRW Automotive U.S. LLC ("TRW Automotive") is a Delaware limited liability company, with its corporate headquarters located in Livonia, Michigan.

28.     ZF-TRW and TRW Automotive (collectively, "TRW" or the "TRW Defendants") design, manufacture, and sell automotive systems, modules, and components to automotive original equipment manufacturers, including airbag systems.  The TRW Defendants engage in interstate commerce by selling automotive systems throughout the United States, including within this District.

29.     At all times relevant to this action, the TRW Defendants and/or their agents manufactured, distributed, sold, and/or warranted airbag systems containing the ACU Defect, as described herein, in California and throughout the United States.

**C.     Vehicle Manufacturer Defendants**

30.     Defendant American Honda Motor Co., Inc., ("American Honda") is a California corporation, with its corporate headquarters located at 1919 Torrance Boulevard, Torrance, California.

31.     Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Honda Motor

manufactures and sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

32.     Defendant Honda of America Mfg., Inc. ("Honda Mfg.") is an Ohio corporation with its corporate headquarters located at 2400 Honda Parkway, Marysville, Ohio. Honda Mfg. is a subsidiary of Honda Motor. Honda Mfg. is involved in the design, manufacture, testing, marketing, distribution and sale of Honda vehicles in the United States.

33.     Defendant Honda R&D Americas, Inc. ("Honda R&D") is a California corporation with its corporate headquarters located at 21001 State Route 739, Raymond, Ohio.  Honda R&D is involved in the design, development, manufacture, assembly, testing, distribution and sale of Honda vehicles.  Defendants American Honda, Honda Motor, Honda Mfg., and Honda R&D are collectively referred to as "Honda" or the "Honda Defendants."

34.     Honda designs, engineers, manufactures, markets and/or sells vehicles under the Honda and Acura brands in California and throughout the United States, through its network of authorized motor vehicle dealers. Honda engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

35.     Defendant Hyundai Motor Group ("Hyundai Group") is a foreign for-profit corporation with its principal place of business in Seoul, South Korea. Hyundai Group manufactures automobiles, steel, and automotive parts.

36.     Defendant Hyundai Motor Co. ("Hyundai Motor") is a subsidiary of Hyundai Group and is headquartered in Seoul, South Korea. Hyundai Motor manufactures and sells automobiles through independent retail dealers, outlets, and authorized dealerships primarily in North America, South America, Asia, Europe, Africa, and Oceania.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

37.     Defendant Hyundai MOBIS Co. Ltd. ("Hyundai MOBIS") is a foreign for-profit corporation with its principal place of business in Seoul, South Korea. Hyundai MOBIS manufactures and supplies automotive parts.

38.     Defendant Hyundai Motor America, Inc. ("Hyundai America") is a California corporation, with its corporate headquarters located at 10550 Talbert Ave., Fountain Valley, California.  Hyundai America is a subsidiary of Hyundai Group. Defendants Hyundai Group, Hyundai Motor, Hyundai MOBIS, and Hyundai America are collectively referred to as "Hyundai."

39.     Defendant Hyundai America markets and/or sells vehicles under the Hyundai brand in California and throughout the United States, through its network of authorized motor vehicle dealers.  Hyundai engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

40.     Defendant Kia Motors Corp. ("Kia Motors") is a subsidiary of Hyundai Group and is headquartered in Seoul, South Korea. Kia Motors manufactures and sells automobiles through independent retail dealers, outlets, and authorized dealerships primarily in North America, South America, Europe, and India.

41.     Defendant Kia Motors America, Inc., ("Kia America") is a California corporation, with its corporate headquarters located at 111 Peters Canyon Road, Irvine, California.  Kia is a subsidiary of Hyundai Group.  Defendants Kia Motors and Kia America are collectively referred to as "Kia."

42.     Kia designs, engineers, manufactures, markets and/or sells vehicles under the Kia brand in California and throughout the United States through its network of authorized motor vehicle dealers.  Kia engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

CLASS ACTION COMPLAINT

43. Defendants Hyundai Group, Hyundai Motor, Hyundai America, Hyundai MOBIS, Kia Motors, and Kia America are collectively referred to as "Hyundai/Kia" or the "Hyundai/Kia Defendants."

44. FCA US LLC ("FCA") is a Delaware corporation, with its corporate headquarters located at 1000 Chrysler Drive, Auburn Hills, Michigan.

45. FCA designs, engineers, manufactures, markets and/or sells vehicles under the Fiat, Jeep, Dodge and Ram brands in California and throughout the United States through its network of authorized motor vehicle dealers. FCA engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

46. Defendant Toyota Motor North America, Inc. ("Toyota") is a California corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas.

47. Defendant Toyota Motor Sales, U.S.A., Inc., ("TMS") is a California corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas.

48. Toyota designs, engineers, manufactures, markets and/or sells vehicles under the Toyota brand in California and throughout the United States through its network of authorized motor vehicle dealers. Toyota engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

49. Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is a Kentucky corporation, with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024. TEMA is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the U.S., Mexico, and Canada. TEMA is a subsidiary of Toyota. Defendants Toyota, TMS, and TEMA are collectively referred to as "Toyota" or the "Toyota Defendants."

11                                    CLASS ACTION COMPLAINT

50.    Honda, Hyundai, Kia, FCA and Toyota together are referred to herein as the "Vehicle Manufacturer Defendants."   At all times relevant to this action, the Vehicle Manufacturer Defendants and/or their agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States

## IV.    FACTUAL ALLEGATIONS

### A.    The Class Vehicles

51.    The affected airbag systems containing the ACU Defect include those manufactured by TRW and subject to investigation by NHTSA ODI.   These airbag systems contain ACUs that suffer from susceptibility to EOS—an electrical overstress condition that causes electric components in the ACUs to malfunction—resulting in failure of airbags and other supplemental restraints to deploy when Class Vehicles suffer an impact.   As a result of the ACU Defect, the airbag systems pose unreasonably dangerous safety risks to Plaintiffs and members of the Classes, including the risk of injury and death.

52.    All Class Vehicles are equipped with an airbag system containing the ACU Defect. "Class Vehicles" refers to the following affected vehicles:  2014-2019 Acura RLX; 2014-2019 Acura RLX HYBRID; 2012-2014 Acura TL; 2015-2017 Acura TLX; 2012-2014 Acura TSX; 2014 Acura TSX SPORT WAGON;  2012-2013 Acura TSX SPORTSWAGON; 2010-2011 Dodge NITRO; 2012-2019 Fiat 500; 2013-2015 Honda ACCORD; 2014-2015 Honda ACCORD HYBRID; 2012-2015 Honda CIVIC; 2012-2015 Honda CIVIC GX; 2012-2015 Honda CIVIC HYBRID; 2012-2015 Honda CIVIC SI;  2012-2016 Honda CR-V;  2012-2017 Honda FIT; 2013-2014 Honda FIT EV; 2012-2014 Honda RIDGELINE;  2013-2019 Hyundai SONATA;  2013-2019 Hyundai SONATA HYBRID; 2015-2017 Jeep COMPASS; 2010-2012 Jeep LIBERTY; 2015-2017 Jeep PATRIOT; 2010-2018 Jeep WRANGLER; 2013 Kia FORTE; 2013 Kia FORTE KOUP; 2013-2019 Kia OPTIMA;  2012-2016 Kia OPTIMA HYBRID; 2014 Kia SEDONA; 2009-2012 Ram

1500; 2010-2012 Ram 2500; 2010-2012 Ram 3500; 2011-2012 Ram 4500; 2011-2012 Ram 5500; 2012-2018 Toyota AVALON; 2013-2018 Toyota AVALON HYBRID; 2011-2019 Toyota COROLLA; 2011-2013 Toyota COROLLA MATRIX; 2012-2017 Toyota SEQUOIA; 2012-2019 Toyota TACOMA; and 2012-2017 Toyota TUNDRA.

53.   TRW supplied the Vehicle Manufacturers with the defective ACUs and the Vehicle Manufacturers equipped the Class Vehicles with airbag systems containing the ACU Defect, which Defendants did not disclose to Plaintiffs or members of the Classes.

54.   Despite their knowledge of the ACU Defect and corresponding safety risks, the Vehicle Manufacturers have not recalled the Class Vehicles.

### B.   The ACU Defect

55.   The airbag systems in the Class Vehicles contain ACUs which sense vehicle crashes and evaluate whether airbag deployment is necessary in the event of an impact.[12]  The ACU is located in the Class Vehicles' passenger compartments and is electrically connected to crash sensors located at the front of the Class Vehicles. *Id.*  Based on the results of the sensor, the ACU will deploy the appropriate airbags and other safety restraints to protect drivers and passengers from an accident or impact.  *Id.*

56.   In addition to airbags, the ACUs also deploy other safety restraints such as seatbelt pretensioners.  A seatbelt pretensioner is a critical safety component of the seatbelt system that locks the seatbelt in place during a crash. When the vehicle's ACU detects a crash, it sends a signal to the seatbelt pretensioner to initiate a concealed piston that proceeds to drive the spool that wraps and controls the seatbelt fabric. This retraction removes slack from the seatbelt, pulling the vehicle occupant's body firmly into his seat, and milliseconds later, releasing the occupant in a timely

---

[12]   *See* Exhibit C, NHTSA ODI Resume, Investigation EA 19-001.

CLASS ACTION COMPLAINT

manner to receive the maximum protection benefit of the airbag. The ACU Defect can also cause the seatbelt pretensioner to fail and not engage during a crash.

57. For illustrative purposes, below is a schematic representation of a 2012 Toyota Corolla airbag system:[13]



58. The ACU contains an electronic component—an application specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the Class Vehicles. If the ASIC fails, the ACU will not operate properly and airbags and other supplemental restraints will not deploy when needed. *See* NHTSA ODI Resume, Investigation EA 19-001.

59. According to NHTSA ODI, in the airbag systems in the Class Vehicles, the ACUs are experiencing electrical overstress due to harmful electrical signals that damage the ASIC. *Id.* This causes the ACUs to stop working, and as a result, the

---

[13] ALLDATA AUTOMOTIVE INTELLIGENCE, http://www.alldata.com (last visited Apr. 25, 2019).

proper airbag and supplemental restraints are not being deployed during a crash—subjecting Plaintiffs and members of the Classes to injury and death.

60.     The ACU is intended to have electrical wiring and circuitry that prevents the transmission of harmful signals that may damage the ASIC.   *Id.*   Upon information and belief, the ACUs in the Class Vehicles do not contain sufficient ASIC protection to avoid electrical overstress, which results in failure of the airbags and other safety restraints to deploy when needed.

61.     As discussed above, NHTSA opened an initial investigation on March 16, 2018 into the ACU Defect, which, at that time, had caused front air bags to fail to deploy in numerous crashes, resulting in at least six injuries and four deaths.[14]  The PE investigation identified certain vehicles manufactured by Kia and Hyundai, which contained defective ACUs manufactured by TRW.  *Id.*

62.     At that time, NHTSA ODI indicated certain Kia vehicles "also use similar ACU's supplied by ZF-TRW" and there was "a prior recall, 16V-668 where EOS appeared to be a root cause of air bag non-deployment in significant frontal crashes in certain Fiat Chrysler vehicles."

63.     While the PE investigation focused on certain Hyundai and Kia vehicles containing the ACU Defect, NHTSA ODI identified ZF-TRW as the supplier of the defective ACUs, putting the Vehicle Manufacturers on notice of the ACU Defect.

64.     As a result of the PE investigation, Kia and Hyundai instituted recalls of certain vehicles affected by the ACU Defect, including 2010-2013 Kia Fortes; 2010-2013 Kia Forte Koups; 2011-2013 Kia Optimas; 2011-2013 Kia Optima Hybrids; 2011-2012 Kia Sedonas; 2011-2012 Hyundai Sonatas; and 2011-2013 Hyundai Sonata Hybrids.[15]

---

[14]     Exhibit B, NHTSA ODI Resume, Investigation EA 18-003.

[15]     *See* Exhibits D and E, Kia and Hyundai recalls.

CLASS ACTION COMPLAINT

65.     The ACU Defect is described as follows in Kia recall: "The recalled vehicles are equipped with an Advanced Airbag System ("AAS").  The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events."[16]   The Kia recall further described the cause of the defect as "the ASIC component within the subject ACUs may be susceptible to EOS due to inadequate circuit protection" and explained the safety risk as follows: "[i]f the ASIC becomes damaged, the front airbags and seatbelt pretensioners may not deploy in certain frontal crashes where deployment may be necessary, thereby increasing the risk of injury."[17]

66.     FCA also issued a recall for certain vehicles containing the ACU Defect in September 2016, disclosing that the EOS condition resulted in a failure of the ASIC, which caused airbag non-deployment.[18] To date, none of the Class Vehicles have been recalled.

67.     On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect to an Engineering Analysis.  Such an upgrade of an NHTSA investigation occurs only after particular criteria are met signifying the need for an enhanced investigation.[19]

68.     An Engineering Analysis entails "a more detailed and complete analysis of the character and scope of the alleged defect," building on the information collected during the initial investigation.[20]   As a result of an Engineering Analysis,

---

[16]     *See* Exhibit D, Kia recall.

[17]     *Id.*

[18]     *See* Exhibit F, FCA recall.

[19]     *See* NHTSA, *Motor Vehicle Defects and Safety Recalls: What Every Vehicle Owner Should Know*, https://www-odi.nhtsa.dot.gov/recalls/documents/MVDefects andRecalls.pdf (revised Aug. 2017).

[20]     *Id.*

16                                      CLASS ACTION COMPLAINT

NHTSA may recommend a safety recall or work with a manufacturer to issue a safety recall.[21]

69.     NHTSA upgraded the investigation into the ACU Defect in order to expand the scope of affected vehicles to include the Class Vehicles, *inter alia*, and include the TRW Defendants in the investigation.[22]

70.     The ACU Defect poses a significant safety risk to Plaintiffs and Class members and NHTSA has documented numerous crashes causing injuries, including several fatalities..[23]

71.     Most recently, NHTSA ODI "identified two substantial frontal crash events (one fatal) involving Toyota products where EOS is suspected as the likely cause of the non-deployments."[24]   As explained by NHTSA ODI, "[t]he crashes involved a MY 2018 and a MY 2019 Corolla equipped with the subject ACU that incorporated higher levels of ASIC protection" where "both ACUs were found to be non-communicative (meaning the ACU could not be read with an Event Data Recorder) after the crash, a condition found in other cases where EOS occurred with other OEMs."[25]

72.     The defective airbag systems were designed, engineered and manufactured by the TRW Defendants with design and/or manufacturing flaws that cause the ACU Defect and cause the airbags and other supplemental restraints to not deploy in a crash.  By designing, manufacturing, assembling, inspecting, distributing,

---

[21]     *Id.*

[22]     Exhibit C, NHTSA ODI Resume, Investigation EA 19-001.

[23]     *See id.; see also* Tom Krisher, *US Expands Probe Into ZF-TRW Air Bag Failures to 12.3M Vehicles*, NBC LOS ANGELES (Apr. 23, 2019, 6:36 AM), https://www.nbclosangeles.com/news/national-international/US-Expands-ZF-TRW-Air-Bag-Failure-Probe-508942951.html.

[24]     Exhibit C, NHTSA ODI Resume, Investigation EA 19-001.

[25]     *Id.*

CLASS ACTION COMPLAINT

and/or selling defective ACUs and/or Class Vehicles equipped with airbag systems containing the ACU Defect, Defendants rendered the Class Vehicles unsafe for their intended use and purpose.

73. Upon information and belief, the ACU Defect was caused, among other things, by TRW's design, manufacture or assembly of the ACUs.

74. As alleged herein, Plaintiffs and members of the Classes unknowingly purchased or leased Class Vehicles that contain the ACU Defect and suffered diminished market value, did not receive the benefit of their bargain, and suffered other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' misrepresentations and/or omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the ACU Defect and its associated safety risks. The fact that the Class Vehicles suffer from the ACU Defect is material to Plaintiffs and members of the Classes because it diminishes the value of the Class Vehicles and exposes drivers and passengers of the Class Vehicles to unreasonable safety risks.

75. As a result of Defendants' material omissions, including their failure to disclose the presence of the ACU Defect in the Class Vehicles, Defendants have caused Plaintiffs and members of the Classes to suffer actual damages, including but not limited to out-of-pocket expenses and the diminished value of their vehicles.

**C. Defendants' Knowledge of the ACU Defect and Associated Safety Risks**

76. Defendants fraudulently, intentionally, and/or recklessly concealed from Plaintiffs and members of the Classes the ACU Defect even though Defendants knew or should have known that defects in design, manufacturing, materials and/or workmanship were causing the ACU Defect if Defendants had adequately tested the airbag systems in the Class Vehicles.

77. Knowledge and information regarding the ACU Defect were in the exclusive and superior possession of Defendants, and that information was not

18                                                      CLASS ACTION COMPLAINT

provided to Plaintiffs and members of the Classes.  Based on pre-production testing, preproduction design or failure mode analysis, production design or failure mode analysis, post-collision inspections, NHTSA investigations, wrongful death and personal injury lawsuits, and early consumer complaints made to Defendants' network of vehicle manufacturers, *inter alia*, Defendants were aware (or should have been aware) of the ACU Defect in the Class Vehicles and fraudulently concealed the ACU Defect and safety risks from Plaintiffs and members of the Classes.

78.   As early as August 2011, TRW and Hyundai/Kia had knowledge that the ACU Defect could cause failure of the airbags and other safety restraints in the Class Vehicles to deploy in an accident.  At that time, TRW analyzed data from a Kia Forte that had been involved in a collision in China where its airbags did not deploy.[26] TRW "observe[d] damage on the ASIC that is consistent with EOS."[27]

79.   Thereafter, in March 2012, TRW analyzed another Kia Forte where airbags did not deploy in a collision that took place in Egypt and again determined that electrical overstress was negatively affecting the proper functioning of the ASIC in the ACU.[28]   In May 2012, TRW communicated with Hyundai/Kia "about the investigation of field events with observed EOS."[29]

80.   Hyundai/Kia, on the other hand, suggested the failures of the airbag systems in both Kias were due to "commanded non-deployment."[30]   TRW and Hyundai/Kia communicated about these ACU malfunctions and related investigations throughout 2011 and 2012.

---

[26]   *See* Exhibit A, TRW Automotive Inc. (ZF) Chronology.

[27]   *Id*.

[28]   *See id*.

[29]   *Id.*

[30]   *Id.*

CLASS ACTION COMPLAINT

81.    In 2015, TRW analyzed data from a Hyundai Sonata and multiple Kia Fortes that experienced similar airbag non-deployment.[31]  Again, TRW noted ASIC damage consistent with EOS and again Hyundia/Kia pointed to commanded non-deployment.[32]

82.    From 2015 through 2018, TRW and Hyundai/Kia continued to investigate collisions involving Hyundai/Kia vehicles where airbags did not properly deploy, inspected vehicles involved in the accidents, and communicated regarding the results of their findings related to the ACU Defect.[33]

83.    In January 2016, TRW communicated with the Vehicle Manufacturers Defendants regarding EOS and the contact TRW had with NHTSA.[34]  Thereafter, in February 2016, TRW met with NHTSA "to discuss its investigation of EOS observed on its ACUs and incidents involving nondeployment of airbags."[35]

84.    In February 2016, Kia met with TRW to discuss NHTSA's concerns with EOS issues.  TRW declined to provide detailed information concerning its experience with the ACU Defect and ASIC issues with other manufacturers, and further, advised Kia that the ACU Defect did not cause airbag nondeployment in any Kia vehicles.[36]

85.    In September 2016, TRW provided data to certain Vehicle Manufacturer Defendants "pertaining to its supply of ACUs with particular ASICs" and again communicated with the Vehicle Manufacturer Defendants regarding their supply of ACU's and their ASIC research.[37]  However, TRW and the Vehicle Manufacturer

---

[31]    *See id.*

[32]    *See id.*

[33]    *Id.*

[34]    *See id.*

[35]    *Id.*

[36]    Exhibit G, Kia Chronology.

[37]    Exhibit A, TRW Automotive Inc. (ZF) Chronology.

CLASS ACTION COMPLAINT

Defendants did not inform Plaintiffs or Class Members of the existence of the ACU Defect or associated safety risks.

86.     On September 6, 2016, FCA conducted a voluntary safety recall on certain vehicles experiencing EOS in the ASIC of the ACUs, but did not recall the Class Vehicles.

87.     During 2016 and 2017, Hyundai investigated numerous collisions with allegations of airbag nondeployment. Hyundai investigated the cause of nondeployments, enlisted the assistance of TRW in the investigations and discussed TRW's inspection of recovered ACUs, but ultimately determined that airbag deployment was not warranted in each accident.[38] Hyundai's findings were communicated to NHTSA in November 2017.[39]

88.     Throughout 2017 and 2018, TRW and Hyundai/Kia conducted additional inspections of Hyundai/Kia vehicles experiencing airbag non-deployment as a result of the ACU Defect. TRW continued to note damage to ASICs consistent with EOS.[40]

89.     Throughout 2018, TRW continued to discuss the ACU Defect with NHTSA and the Vehicle Manufacturer Defendants.

90.     On February 27, 2018, Hyundai recalled certain Hyundai vehicles suffering from the ACU Defect, but did not recall the Class Vehicles.

91.     In March 2018, TRW communicated with the Vehicle Manufacturer Defendants regarding the ACU Defect.[41]    However, TRW and the Vehicle Manufacturer Defendants concealed the ACU Defect and associated safety risks from the public, including Plaintiffs and Class Members.[42]

---

[38]     Exhibit H, Hyundai Chronology.

[39]     *See id.*

[40]     Exhibit A, TRW Automotive Inc. (ZF) Chronology.

[41]     *See id.*

[42]     *See id.*

21                                                CLASS ACTION COMPLAINT

92.     On June 1, 2018, Kia recalled certain Kia vehicles suffering from the ACU Defect, but did not recall the Class Vehicles.

93.     Defendants fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiffs and members of the Classes the ACU Defect even though Defendants knew or should have known of design and/or manufacturing defects in the airbag systems in the Class Vehicles.

94.     Defendants knew, or should have known, that the ACU Defect and associated safety risks were material to owners and lessees of the Class Vehicles and were not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

95.     Defendants gained their knowledge of the ACU Defect through sources not available to Plaintiffs and members of the Classes.  Notwithstanding Defendants' exclusive and superior knowledge of the ACU Defect, the Vehicle Manufacturer Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the ACU Defect.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

96.     Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the ACU Defect and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Class Vehicles and could not reasonably discover the ACU Defect or Defendants' deception with respect to the defect.

97.     Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or that the Class Vehicles contained an ACU Defect

and corresponding safety risk.  As alleged herein, the existence of the ACU Defect was material to Plaintiffs and members of the Classes at all relevant times.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence the existence of the ACU Defect, the associated safety risk, or that Defendants were concealing the defect.

98.     At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class Vehicles and to disclose the ACU Defect and corresponding safety risks.

99.     Defendants knowingly, actively and affirmatively concealed the facts alleged herein.   Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active, and affirmative concealment.

100.   For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VI.   CLASS ACTION ALLEGATIONS

101.   Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Class and Sub-Classes:

**Nationwide Class**: All persons or entities in the United States who purchased, leased or own a Class Vehicle (the "Nationwide Class" or "Class");

**California Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California who purchased, leased or own a Class Vehicle (the "California Sub-Class");

**Song-Beverly Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of California (the "Song-Beverly Sub-Class");

**Illinois Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Illinois and all persons or entities in the State of Illinois who purchased, leased or own a Class Vehicle (the "Illinois Sub-Class");

CLASS ACTION COMPLAINT

**Massachusetts Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Massachusetts and all persons or entities in the State of Massachusetts who purchased, leased or own a Class Vehicle (the "Massachusetts Sub-Class");

**Nevada Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Nevada and all persons or entities in the State of Nevada who purchased, leased or own a Class Vehicle (the "Nevada Sub-Class");

**New York Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of New York and all persons or entities in the State of New York who purchased, leased or own a Class Vehicle (the "New York Sub-Class");

**Washington Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Washington and all persons or entities in the State of Washington who purchased, leased or own a Class Vehicle (the "Washington Sub-Class") (collectively with the California, Song-Beverly, Illinois, Massachusetts, New York, and Nevada Sub-Class, the "Sub-Classes").

102.   Excluded from the Class and Sub-Classes are Defendants and their parents, subsidiaries and corporate affiliates.  Plaintiffs reserve the right to revise the definition of the Class and Sub-Classes based upon subsequently discovered information and reserve the right to establish additional subclasses where appropriate. The Class and Sub-Classes are collectively referred to herein as the "Classes."

103.   The Classes are so numerous that joinder of all members is impracticable.   Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

104.   Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

- Whether the Class Vehicles contain the ACU Defect;

- Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

CLASS ACTION COMPLAINT

- Whether the Vehicle Manufacturer Defendants were unjustly enriched by their conduct;

- Whether certain Defendants associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity;

- Whether certain Defendants conspired together to violate RICO;

- Whether Plaintiffs and members of the Classes suffered injury by reason of such a pattern of racketeering activity;

- Whether the Class Vehicles were unfit for the ordinary purpose for which they were intended to be used, in violation of the implied warranty of merchantability;

- Whether certain Defendants employed any false, misleading, unfair or deceptive acts or practices in the conduct of trade or commerce;

- Whether any false, misleading, unfair, or deceptive acts or practices of Defendants were likely to or did mislead reasonable consumers, including but not limited to members of the Classes, about the true value and performance of the Class Vehicles;

- Whether members of the Classes were deprived of the benefit of the bargain with regard to their purchases or leases of Class Vehicles;

- Whether Plaintiffs and members of the Classes suffered injury-in-fact or actual damages as a result of Defendants' false, misleading, unfair, or deceptive acts or practices;

- Whether Defendants violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*;

- Whether Defendants violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*;

- Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

CLASS ACTION COMPLAINT

- Whether Defendants violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*;

- Whether Defendants violated Mass. Gen. Laws Ch. 93A, §§ 1, *et seq.*;

- Whether Defendants violated the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903 *et seq.*;

- Whether Defendants violated the New York General Business Law, N.Y. Gen. Bus. Law §§ 349, 350;

- Whether Defendants violated the Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.610 *et seq.*;

- Whether Defendants violated Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*;

- Whether Defendants violated the warranty provisions of 810 Ill. Comp. Stat. § 5/2-314 and 5/2A-212;

- Whether the ACU Defect is a design defect and/or a defect in material, manufacturing and/or workmanship;

- Whether the ACU Defect in the Class Vehicles presents a safety risk;

- Whether and when Defendants knew or should have known about the ACU Defect;

- Whether Defendants knew or should have known that the ACU Defect in Class Vehicles presents a safety risk;

- Whether Defendants had a duty to disclose the ACU Defect;

- Whether Defendants breached their duty to disclose the ACU Defect;

- Whether Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the ACU Defect;

26

CLASS ACTION COMPLAINT

- Whether Defendants made material omissions concerning the standard, quality or grade of the Class Vehicles and/or the ACU Defect;

- Whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

- Whether Defendants actively concealed material facts from Plaintiffs and members of the Classes;

- Whether Defendants breached their implied warranties to Plaintiffs and members of the Classes;

- Whether the Vehicle Manufacturer Defendants breached their express warranties to Plaintiffs and members of the Classes;

- Whether members of the Classes would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks;

- Whether members of the Classes would have purchased or leased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks;

- Whether damages, restitution, equitable, injunctive, compulsory or other relief is warranted.

105. Plaintiffs' claims are typical of the claims of the Classes Plaintiffs seek to represent. As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same unlawful actions and conduct by Defendants.

106. Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

107. Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes. Plaintiffs will undertake to represent

27                                    CLASS ACTION COMPLAINT

and protect the interests of absent members within the Classes and will vigorously prosecute this action.

108.   Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

109.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

110.   Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

111.   The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

112.   The interests of members of the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.   The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

CLASS ACTION COMPLAINT

## VII.   CLAIMS FOR RELIEF

### COUNT I
### Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against TRW Defendants and Hyundai/Kia Defendants
### (On behalf of the Nationwide Class)

113.   Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though set forth fully herein.

114.   Plaintiffs bring this Count on behalf of themselves and the Nationwide Class against TRW Defendants and Hyundai/Kia Defendants.

115.   TRW Defendants and Hyundai/Kia Defendants are all "persons" under 18 U.S.C. § 1961(3).

116.   TRW Defendants and Hyundai/Kia Defendants violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the ACU RICO Enterprise through a pattern of racketeering activity.

117.   Plaintiffs and Class Members are "person[s] injured in his or her business or property" by reason of TRW Defendants' and Hyundai/Kia Defendants' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

### **The ACU RICO Enterprise**

118.   The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the ACU RICO Enterprise:

> a.   <u>TRW Defendants</u>, who designed, manufactured, and sold millions of Defective ACUs knowing that they contained the ACU Defect, the scope and nature of which they concealed from and misrepresented to the public and regulators for years and still refuse to entirely acknowledge.

CLASS ACTION COMPLAINT

b. <u>TRW Defendants' Officers, Executives, and Engineers</u>, who have collaborated and colluded with each other and with other associates in fact in the ACU RICO Enterprise to deceive Plaintiffs and Class Members into purchasing dangerous and defective vehicles, and actively concealing the ACU Defect and associated safety risks from Plaintiffs and Class Members.

c. <u>Hyundai/Kia Defendants</u>, who purchased the Defective ACUs from TRW Defendants, equipped their vehicles with the Defective ACUs, falsely misrepresented that airbag nondeployment was a result of commanded nondeployment rather than the ACU Defect, concealed the ACU Defect from regulators, Plaintiffs, Class Members and the public from August 2011 forward, and falsely and inaccurately represented that their vehicles were safe, thereby deceiving Plaintiffs and Class Members.

119.   The ACU RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose.  The ACU RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

120.   While TRW Defendants and Hyundai/Kia Defendants participated in the conduct of the ACU RICO Enterprise, they had an existence separate and distinct from the ACU RICO Enterprise.  Further, the ACU RICO Enterprise was separate and distinct from the pattern of racketeering in which TRW Defendants and Hyundai/Kia Defendants have engaged.

121.   At all relevant times, TRW Defendants and Hyundai/Kia Defendants operated, controlled, or managed the ACU RICO Enterprise, through a variety of

CLASS ACTION COMPLAINT

actions.  TRW Defendants and Hyundai/Kia Defendants' participation in the ACU RICO Enterprise was necessary for the successful operation of its scheme to defraud because TRW Defendants manufactured the Defective ACUs, Hyundai/Kia Defendants equipped certain of the Class Vehicles with the Defective ACUs, and TRW Defendants and Hyundai/Kia Defendants concealed the nature and scope of the ACU Defect, and profited from such concealment.

122.  The members of the ACU RICO Enterprise all served a common purpose: to sell as many ACUs, and vehicles containing such ACUs, as possible, and thereby maximize the revenue and profitability of the ACU RICO Enterprise's members.  The members of the ACU RICO Enterprise shared the profits generated by the enterprise, i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud.  Each member of the ACU RICO Enterprise benefited from the common purpose: the Hyundai/Kia Defendants sold or leased more Class Vehicles, and received more for those vehicles, than they would have otherwise had the scope and nature of the ACU Defect not been concealed; TRW Defendants sold more Defective ACUs to the Hyundai/Kia Defendants and the Vehicle Manufacturer Defendants than they would have otherwise had the scope and nature of the ACU Defect not been concealed; and the Hyundai/Kia Defendants and Vehicle Manufacturer Defendants sold and serviced more Class Vehicles, and sold or leased those vehicles at a much higher price, as a result of the concealment of the scope and nature of the ACU Defect from Plaintiffs and Class Members.

**Pattern of Racketeering Activity**

123.  TRW Defendants and the Hyundai/Kia Defendants conducted and participated in the conduct of the affairs of the ACU RICO Enterprise through a pattern of racketeering activity that has lasted for several years, beginning no later than 2011 and continuing to this day, and that consisted of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any

CLASS ACTION COMPLAINT

interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

124.  For TRW Defendants and the Hyundai/Kia Defendants, the purpose of the scheme to defraud was to conceal the scope and nature of the ACU Defect found in millions of Defective ACUs in the United States in order to sell more ACUs, sell more Class Vehicles equipped with the defective ACUs, to sell them at a higher price or for a higher profit, and to avoid incurring the expenses associated with repairing the ACU Defect.  By concealing the scope and nature of the ACU Defect in its millions of Defective ACUs, TRW Defendants and the Hyundai/Kia Defendants also maintained and boosted consumer confidence in their brands and the brands of Vehicle Manufacturer Defendants, and avoided remediation costs and negative publicity, all of which furthered the scheme to defraud and helped TRW Defendants and the Hyundai/Kia Defendants sell more ACUs and/or Class Vehicles than they would otherwise have sold, and to sell them at a much higher price or for a higher profit.

125.  As detailed herein, TRW Defendants and the Hyundai/Kia Defendants were well aware of the risks associated with the defective ACUs, but intentionally subjected Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits.

126.  To further the scheme to defraud, TRW Defendants and the Hyundai/Kia Defendants repeatedly misrepresented and concealed the nature and scope of the ACU Defect.  TRW Defendants continued to produce, market, and ship its Defective ACU's, and the Hyundai/Kia Defendants continued to equip certain Class Vehicles with the defective ACUs, when in fact TRW Defendants and the Hyundai/Kia Defendants knew that the ACUs were subject to a fundamental, uniform defect that rendered the airbag systems unsuitable to perform their sole purpose, protecting automobile occupants in collisions.

CLASS ACTION COMPLAINT

127.   To further the scheme to defraud, TRW Defendants and the Hyundai/Kia Defendants misrepresented and concealed the nature and scope of the ACU Defect. TRW Defendants also permitted or caused the Vehicle Manufacturer Defendants to promote the safety, reliability, and quality of the ACUs and airbag systems contained in Class Vehicles while simultaneously concealing the nature and scope of the ACU Defect.

128.   To carry out, or attempt to carry out, the scheme to defraud, TRW Defendants and the Hyundai/Kia Defendants have conducted or participated in the conduct of the affairs of the ACU RICO Enterprise through a pattern of racketeering activity that employed the use of the mail and wire facilities for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

129.   TRW Defendants and the Hyundai/Kia Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes included, but was not limited to, the following:

a.   From August 2011 through the present, TRW Defendants transmitted or caused to be transmitted, by means of mail travelling in interstate or foreign commerce, shipments of ACUs for installation in the Class Vehicles based on the false pretense and misrepresentation that those ACUs were fit for their sole purpose, in furtherance of TRW Defendants' scheme to defraud, and received payments from the Vehicle Manufacturer Defendants for those shipments. During this same time, the Hyundai/Kia Defendants transmitted or caused to be transmitted, by means of mail travelling in interstate or foreign commerce, shipments of Class Vehicles and payments for defective ACUs.

These regular, repeated shipments of defective ACUs and Class Vehicles and payments therefore facilitated and furthered the scheme to defraud.

b.   From August 2011 through the present, TRW Defendants utilized interstate and international mail and wires for the purpose of obtaining money from the Vehicle Manufacturer Defendants, including the Hyundai/Kia Defendants, in exchange for their ACUs, by means of the false pretenses and misrepresentations herein described.

c.   As early as August 2011, the TRW Defendants and the Hyundai/Kia Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications regarding airbag non-deployment and ASIC damage consistent with EOS. Hyundai/Kia deemed the failure to be a "commanded nondeployment," furthering the scheme to defraud conceal the ACU Defect.

d.   In March 2012, TRW Defendants and the Hyundai/Kia Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications regarding ACIS failure in a 2011 Kia Forte in Egypt where airbags did not deploy.  TRW Defendants, upon analysis, determined that there was ASIC damage consistent with EOS.  Hyundai/Kia deemed the failure to be a "commanded nondeployment," furthering the scheme to defraud conceal the ACU Defect.

e.   In May 2012, TRW Defendants and the Hyundai/Kia Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, fraudulent or

CLASS ACTION COMPLAINT

misleading communications regarding ASIC damage consistent with EOS in Hyundai Sonatas and Kia Fortes that were failing to deploy during accidents. Hyundai/Kia deemed the failures to be a "commanded nondeployment," furthering the scheme to defraud conceal the ACU Defect.

f.   In 2015, TRW Defendants and the Hyundai/Kia Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, fraudulent or misleading communications regarding field events with observed EOS damage.

g.   In January 2016, TRW Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications with the Vehicle Manufacturer Defendants regarding EOS and contact with NHTSA.

h.   On September 23, 2016, TRW Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications with Vehicle Manufacturer Defendants regarding their supply of ACUs and their ASIC research.   In November 2017, the Hyundai/Kia Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications with NHTSA, which misrepresented and concealed the true nature and scope of the ACU Defect.

i.   Between January and February 2018, TRW Defendants, transmitted or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, fraudulent communications with NHTSA discussing the ACU Defect.   TRW

CLASS ACTION COMPLAINT

Defendants concealed from NHTSA the true nature and extent of the ACU Defect.

j.   In April 2018, TRW Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, false and misleading communications to NHTSA regarding their supply of ACUs and their ASIC research.

k.   From at least 2014 through 2018, the Hyundai/Kia Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, false and misleading communications to NHTSA regarding nondeployment of airbags in Hyundai and Kia vehicles as a result of the ACU Defect and concealed the true scope and nature of the ACU Defect from NHTSA, Plaintiffs and Class Members and the public.

130. TRW Defendants' and the Hyundai/Kia Defendants' conduct in furtherance of this scheme was intentional. Plaintiffs and Class Members were directly harmed as a result of TRW Defendants' and the Hyundai/Kia Defendants' intentional conduct. Plaintiffs, Class Members, and federal regulators, among others, relied on TRW Defendants' and the Hyundai/Kia Defendants' material misrepresentations and omissions.

131. As described herein, TRW Defendants and the Hyundai/Kia Defendants' engaged in a pattern of related and continuous predicate acts for years. The predicate acts were each conducted with the common purpose of defrauding Plaintiffs and other Class Members and obtaining significant monies and revenues from them while providing defective ACUs for installation in the Class Vehicles, and or sealing and leasing certain Class Vehicles equipped with defective ACUs, rendering those vehicles worth significantly less than the purchase price paid. The predicate acts

CLASS ACTION COMPLAINT

were related, having the same or similar results, victims, participants, and methods of commission.

132.   The predicate acts all had the purpose of generating significant revenue and profits for TRW Defendants and the Hyundai/Kia Defendants at the expense of Plaintiffs and Class Members.  The predicate acts were committed or caused to be committed by TRW Defendants and the Hyundai/Kia Defendants through their participation in the ACU RICO Enterprise, and in furtherance of their fraudulent scheme to obtain Plaintiffs' and Class Members' funds and to avoid the expense of remediating the ACU Defect.

133.   By reason of and as a result of the conduct of the TRW Defendants and the Hyundai/Kia Defendants, and in particular, the above-described pattern of racketeering activity, Plaintiffs and Class Members have been injured in their business and/or property in multiple ways, including but not limited to:

    a.    overpayment for leased or purchased Class Vehicles, in that Plaintiffs believed they were paying for vehicles with safe airbag systems and obtained vehicles with the ACU Defect, and were deprived of the benefit of their bargain; and

    b.    the value of the Class Vehicles has diminished, thus reducing their resale value.

134.   TRW Defendants' and the Hyundai/Kia Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

CLASS ACTION COMPLAINT

## COUNT II
### Violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against TRW Defendants and the Hyundia/Kia Defendants (On behalf of the Nationwide Class)

135.   Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though set forth fully herein.

136.   Plaintiffs bring this Count on behalf of themselves and the Nationwide Class.

137.   At all relevant times TRW Defendants and the Hyundai/Kia Defendants were associated with the ACU RICO Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in, directly and indirectly, the conduct of the affairs of the ACU RICO Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

138.   Over the course of the past decade, Hyunda/Kia Defendants and TRW Defendants shared information about ACU and airbag failures, jointly and secretly investigated the possible causes of those failures, delayed and/or prevented the release of inculpatory information, misled regulatory authorities, and maintained a consistent public posture as to the scope of vehicles affected by the Defective ACUs and the safety risks those ACUs posed.   Hyundai/Kia Defendants' and TRW Defendants' close cooperation on issues surrounding the ACU Defect and joint participation in predicate acts described below is evidence of the conspiracy.

### Pattern of Overt Acts

139.   The TRW Defendants and Hyundai/Kia Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof.

140.   More specifically, the following conduct and overt acts demonstrate the ongoing conspiracy between Hyundai/Kia Defendants and TRW Defendants:

CLASS ACTION COMPLAINT

141.   In August 2011, after a Kia Forte in China was involved in an accident where the accidents failed to deploy, Hyundai/Kia Defendants and TRW Defendants investigated the cause of the deployment failure.  Although the ACU showed signs of EOS, Hyundai/Kia Defendants and TRW Defendants agreed to fraudulently deem the failure "commanded nondeployment" in future wire and mail communications, concealing the true nature of the airbag failure in furtherance of the conspiracy.

142.  On multiple occasions in 2015 and 2016, TRW Defendants and Hyundai/Kia Defendants discussed several Hyundai and Kia vehicles that were involved in accidents where the airbags failed to deploy.  In light of prior knowledge and the ACU test results in these accidents, TRW Defendants and Hyundai/Kia Defendants agreed or conspired to conceal from the market a pattern of ACU failures in which a vehicle's showed signs of EOS, in furtherance of the conspiracy to portray Hyundai and Kia vehicles as safe in order to sell more vehicles.

143.   Between August 2011 and February 27, 2018, TRW and Hyundai/Kia Defendants agreed or conspired to withhold critical information from both the public and regulatory authorities in furtherance of the conspiracy.  Instead of recalling the dangerous and defective vehicles or alerting the regulatory authorities, TRW and Hyundai/Kia Defendants agreed and conspired to conceal the nature and prevalence of the ACU Defect by multiple means, including by way of fraudulent use of the mail or wires.

144.   TRW Defendants and Hyundai/Kia Defendants agreed to and did conduct and participate in the conduct of the ACU RICO Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs and Class members, as more fully described in the prior Count.

145.   By reason of and as a result of the conduct of the TRW Defendants, and in particular, the above-described pattern of racketeering activity, Plaintiffs and Class Members have been injured in their business and/or property in multiple ways, including but not limited to: overpayment for leased or purchased Class Vehicles, in

CLASS ACTION COMPLAINT

1   that Plaintiffs believed they were paying for vehicles with safe airbag systems and
2   obtained vehicles with the ACU Defect, and were deprived of the benefit of their
3   bargain; and the value of the Class Vehicles has diminished, thus reducing their
4   resale value.

5       146.   Had TRW Defendants and/or Hyundai/Kia Defendants been entirely
6   forthcoming with NHTSA and with the public in a timely manner about the vast
7   scope of the ACU Defect and the grave risks it posed to countless vehicle occupants,
8   as was their duty, Plaintiffs and Class Members would not have suffered these harms.

9       147.   TRW Defendants' and the Hyundai/Kia Defendants' conspiracy to
10  commit mail fraud and/or wire fraud was reasonably calculated to deceive persons of
11  ordinary prudence and comprehension, and was committed with reckless indifference
12  to the truth if not the outright intent to deceive.

13      148.   The Hyundai/Kia Defendants' and TRW Defendants' conspiracy to
14  violate 18 U.S.C. § 1962(c) was committed with the specific intent to defraud,
15  thereby entitling Plaintiffs and Class Members to treble damages under 18 U.S.C. §
16  1964(c).

17      149.   The Hyundai/Kia Defendants' and TRW Defendants' violations of 18
18  U.S.C. § 1962(d) have directly and proximately caused injuries and damages to
19  Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring
20  this action for three times their actual damages, as well as injunctive/equitable relief
21  and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and
22  1964(c).

23
24
25
26
27
28

CLASS ACTION COMPLAINT

**COUNT III**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq.* against all Defendants**
**(On behalf of the Nationwide Class or, alternatively, on behalf of**
**the California, Illinois, Massachusetts, Nevada, New York, and**
**Washington Sub-Classes)**

150.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

151.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class, or, alternatively, on behalf of the California, Illinois, Massachusetts, Nevada, New York, and Washington Sub-Classes against all Defendants.

152.   Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

153.   Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

154.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

155.   The ACUs and Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

156.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

157.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

158.   The Vehicle Manufacturer Defendants provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15

CLASS ACTION COMPLAINT

U.S.C. § 2301(6).  Under warranties provided to members of the Classes, the Vehicle Manufacturer Defendants promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the ACU Defect, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, the Vehicle Manufacturer Defendants breached these warranties.

159.  Defendants provided Plaintiffs and Class members with implied warranties, including an implied warranty of merchantability, in connection with the purchase or lease of the Class Vehicles, whereby Defendants warranted that the ACUs and Class Vehicles were fit for their ordinary purpose as safe vehicles. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

160.  Defendants breached these implied warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the ACU Defect and corresponding safety risks.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that causes the ACUs and Class Vehicles to fail to operate as represented by Defendants and presents a safety risk, and therefore, the Class Vehicles are not fit for their ordinary purpose.

161.  Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the ACU Defect and corresponding safety risks, but failed to repair or replace the ACU Defect and/or disclose the defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

CLASS ACTION COMPLAINT

162.   Plaintiffs and members of the Classes experienced the ACU Defect within the warranty periods but Defendants failed to inform Plaintiffs and members of the Classes of the existence of the ACU Defect and associated safety risk, and failed to provide a suitable remedy or repair of the ACU Defect free of charge within a reasonable time.

163.   Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

164.   Plaintiffs and each of the other members of the Classes have had sufficient direct dealings with either the Vehicle Manufacturer Defendants or their agents (dealerships) to establish privity of contract.

165.   Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between the TRW Defendants and the Vehicle Manufacturer Defendants, and between the Vehicle Manufacturer Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the ACU Defect.

CLASS ACTION COMPLAINT

166.   Plaintiffs and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs and members of the Classes have not re-accepted their Class Vehicles by retaining them.

167.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

168.   Plaintiffs, individually and on behalf of members of the Classes, seek equitable relief, restitution, and all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT IV**
**Fraud by Omission or Fraudulent Concealment against the TRW Defendants**
**(On behalf of the Nationwide Class or, alternatively,**
**on behalf of the California, Illinois, Massachusetts, Nevada, New York, and**
**Washington Sub-Classes)**

169.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

170.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class, or, alternatively, on behalf of the California, Illinois, Massachusetts, Nevada, New York, and Washington Sub-Classes against the TRW Defendants.

171.   The TRW Defendants concealed and suppressed material facts regarding the defective airbag systems—most importantly, the ACU Defect, which causes, among other things, the defective airbag systems to fail to deploy during an accident.

172.   The TRW Defendants had a duty to disclose the ACU Defect because they:

44                                    CLASS ACTION COMPLAINT

a. Had exclusive and/or far superior knowledge and access to the facts regarding the ACU Defect than Plaintiffs and members of the Classes, and the TRW Defendants knew the facts were not known to or reasonably discoverable by Plaintiffs and members of the Classes;

b. Intentionally concealed the foregoing from Plaintiffs and members of the Classes; and

c. Made incomplete representations about the safety and reliability of the defective ACUs and airbag systems and, by extension, the Class Vehicles, while purposefully withholding material facts from Plaintiffs and members of the Classes that contradicted these representations.

173. These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and members of the Classes. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

174. The TRW Defendants concealed and suppressed these material facts to falsely assure purchasers and consumers that its ACUs were capable of performing safely, as represented by the TRW Defendants and reasonably expected by consumers.

175. The TRW Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt the brand's image and cost the TRW Defendants money. The TRW Defendants concealed these facts at the expense of Plaintiffs and members of the Classes.

CLASS ACTION COMPLAINT

176.   Plaintiffs and members of the Class were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

177.   Had they been aware of the defective ACUs and airbag systems and the TRW Defendants' callous disregard for safety, Plaintiffs and members of the Classes either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  Plaintiffs and members of the Classes did not receive the benefit of their bargain as a result of the TRW Defendants' fraudulent concealment.

178.   Because of the concealment and/or suppression of the facts, Plaintiffs and members of the Classes sustained damage because they own vehicles that diminished in value as a result of the TRW Defendants' concealment of, and failure to timely disclose, the serious ACU Defect in millions of Class Vehicles and the serious safety and quality issues caused by the TRW Defendants' conduct.

179.   The value of all Class members' vehicles has diminished as a result of the TRW Defendants' fraudulent concealment of the defective ACUs. The ACU Defect has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

180.   Accordingly, the TRW Defendants are liable to the Class for their damages in an amount to be proven at trial.

181.   The TRW Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Classes' rights and well-being, and with the aim of enriching the TRW Defendants. The TRW Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

46                    CLASS ACTION COMPLAINT

**COUNT V**
**Fraud by Omission or Fraudulent Concealment against the Vehicle Manufacturer Defendants**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California, Illinois, Massachusetts, Nevada, New York, and Washington Sub-Classes)**

182.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

183.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class, or, alternatively, on behalf of the California, Illinois, Massachusetts, Nevada, New York, and Washington Sub-Classes against the Vehicle Manufacturer Defendants.

184.   The Vehicle Manufacturer Defendants concealed and suppressed material facts regarding the Class Vehicles—most importantly, the fact that they were equipped with defective airbag systems containing the ACU Defect which, among other things causes airbags to fail to deploy during an accident.

185.   The Vehicle Manufacturer Defendants had a duty to disclose the ACU Defect because they:

    a.   Had exclusive and/or far superior knowledge and access to the facts regarding the ACU Defect than Plaintiffs and members of the Classes, and the Vehicle Manufacturer Defendants knew the facts regarding the ACU Defect were not known to or reasonably discoverable by Plaintiffs and members of the Classes;

    b.   Intentionally concealed the foregoing from Plaintiffs and members of the Classes; and

    c.   Made incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts regarding the ACU Defect from Plaintiffs and members of the Classes that contradicted these representations.

47                                    CLASS ACTION COMPLAINT

186.   These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and members of the Classes. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Plaintiffs and members of the Classes trusted the Vehicle Manufacturer not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

187.   The Vehicle Manufacturer Defendants concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles containing the defective airbag systems were capable of performing safely, as represented by the Vehicle Manufacturer Defendants and reasonably expected by consumers.

188.   The Vehicle Manufacturer Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' image and cost the Vehicle Manufacturer Defendants money. The Vehicle Manufacturer Defendants concealed these facts at the expense of Plaintiffs and members of the Classes.

189.   Plaintiffs and members of the Class were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

190.   Had they been aware of the ACU Defect and the Vehicle Manufacturer Defendants' callous disregard for safety, Plaintiffs and members of the Classes either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  Plaintiffs and members of the Classes did not receive the benefit of their bargain as a result of the Vehicle Manufacturer Defendants' fraudulent concealment.

191.   Because of the concealment and/or suppression of the facts, Plaintiffs and members of the Classes sustained damage because they own vehicles that diminished in value as a result of the Vehicle Manufacturer Defendants' concealment

1   of, and failure to timely disclose, the serious ACU Defect in the Class Vehicles and

2   the serious safety and quality issues caused by the Vehicle Manufacturer Defendants'

3   conduct.

4       192.   The value of all Class members' Class Vehicles has diminished as a

5   result of the Vehicle Manufacturer Defendants' fraudulent concealment of the ACU

6   Defect. Any reasonable consumer would be reluctant to purchase any of the Class

7   Vehicles as a result of the ACA Defect, let alone pay what otherwise would have

8   been fair market value for the vehicles.

9       193.   Accordingly, the Vehicle Manufacturer Defendants are liable to

10  Plaintiffs and members of the Classes for damages in an amount to be proven at trial.

11      194.   The Vehicle Manufacturer Defendants' acts were done maliciously,

12  oppressively, deliberately, with intent to defraud, and in reckless disregard of

13  Plaintiffs' and the Classes' rights and well-being, and with the aim of enriching the

14  Vehicle Manufacturer Defendants. The Vehicle Manufacturer Defendants' conduct,

15  which exhibits the highest degree of reprehensibility, being intentional, continuous,

16  placing others at risk of death and injury, and affecting public safety, warrants an

17  assessment of punitive damages in an amount sufficient to deter such conduct in the

18  future, which amount is to be determined according to proof.

19              **COUNT VI**
20  **Unjust Enrichment against the Vehicle Manufacturer Defendants**
   **(On behalf of the Nationwide Class or, alternatively, on behalf of**
21  **the California, Illinois, Massachusetts, Nevada, New York, and**
22              **Washington Sub-Classes)**

23      195.   Plaintiffs incorporate and re-allege each preceding paragraph as though

24  fully set forth herein.

25      196.   Plaintiffs bring this count on behalf of themselves and the members of

26  the Nationwide Class, or, alternatively, on behalf of the California, Illinois,

27  Massachusetts, Nevada, New York, and Washington Sub-Classes against the Vehicle

28  Manufacturer Defendants.

CLASS ACTION COMPLAINT

197.   The Vehicle Manufacturer Defendants have received and retained a benefit from the Plaintiffs and members of the Classes and inequity has resulted.

198.   The Vehicle Manufacturer Defendants benefitted through their unjust conduct, by selling Class Vehicles that contain defective airbag systems with the ACU Defect and a concealed safety-and-reliability related defect, at a profit, for more than the Class Vehicles were worth, to Plaintiffs and members of the Classes, who overpaid for these defective airbag systems by overpaying for their Class Vehicles, and/or would not have purchased Class Vehicles at all; and who have been forced to pay other costs.

199.   It is inequitable for the Vehicle Manufacturer Defendants to retain these benefits.

200.   Plaintiffs and members of the Classes do not have an adequate remedy at law.

201.   As a result of the Vehicle Manufacturer Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

**COUNT VII**
**Violation of the Song-Beverly Consumer Warranty Act for Breach of the Implied Warranty of Merchantability, Cal. Civ. Code §§ 1791.1 & 1792, against all Defendants**
**(On behalf of the Song-Beverly Sub-Class)**

202.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

203.   Plaintiffs Altier and Sacchetti bring this count on behalf of themselves and the members of the Song-Beverly Sub-Class against all Defendants.

204.   Plaintiffs Altier and Sacchetti and members of the Song-Beverly Sub-Class are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

205.   The Class Vehicles and/or the ACUs installed in them are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

CLASS ACTION COMPLAINT

206.   Defendants are all considered a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

207.   Defendants impliedly warranted to Plaintiffs Altier and Sacchetti and members of the Song-Beverly Sub-Class that the Class Vehicles and/or the defective ACUs installed in them were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, they do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

208.   Cal. Civ. Code § 1791.1(a) states: "[i]mplied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: 1) Pass without objection in the trade under the contract description; 2) Are fit for the ordinary purposes for which such goods are used; 3) Are adequately contained, packaged, and labeled; and 4) Conform to the promises or affirmations of fact made on the container or label.

209.   The Class Vehicles and/or the defective ACUs installed in them would not pass without objection in the automotive trade because defective airbag systems containing the ACU Defect can fail to deploy during an accident.

210.   Because of the ACU Defect, the Class Vehicles are not safe to drive and thus not fit for ordinary purposes.

211.   The Class Vehicles and/or the defective ACUs installed in them are not adequately labeled because the labeling fails to disclose the ACU Defect in them. Defendants failed to warn about the dangerous ACU Defect in the Class Vehicles.

212.   Defendants breached the implied warranty of merchantability by manufacturing and selling the Class Vehicles and/or the defective ACUs installed in them which cause airbags to fail to deploy during an accident. These defective airbag systems have deprived Plaintiffs Altier and Sacchetti and members of the Song-Beverly Sub-Class of the benefit of their bargain, and has caused the Class Vehicles to depreciate in value.

CLASS ACTION COMPLAINT

213.   Defendants were provided notice of these issues by their knowledge of the issues, by numerous lawsuits and complaints filed against them and/or others, and by internal and NHTSA investigations, inter alia.

214.   As a direct and proximate result of Defendants' breach of their duties under California Law, Plaintiffs Altier and Sacchetti and members of the Song-Beverly Sub-Class received goods whose dangerous condition substantially impairs their value. Plaintiffs Altier and Sacchetti and members of the Song-Beverly Sub-Class have been damaged by the diminished value, malfunctioning, and non-use of their Class Vehicles.

215.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs Altier and Sacchetti and members of the Song-Beverly Sub-Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

216.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs Altier and Sacchetti and members of the Song-Beverly Sub-Class are entitled to costs and attorneys' fees.

## COUNT VIII
### California Breach of Express Warranty, Cal. Com. Code §§ 2313 and 10210, against the Vehicle Manufacturer Defendants
### (On behalf of the California Sub-Class)

217.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

218.   Plaintiffs Altier and Sacchetti brings this count on behalf of themselves and the members of the California Sub-Class against the Vehicle Manufacturer Defendants.

219.   The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of the Class Vehicles under § 2103(1)(d).

CLASS ACTION COMPLAINT

220.   With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

221.   The Class Vehicles and the ACUs are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1), 10103(a)(8).

222.   In connection with the purchase or lease of each one of its new vehicles, the Vehicle Manufacturer Defendants provide express warranties.  Kia provides a limited basic warranty for a period of 5 years or 60,000 miles, whichever occurs first and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  FCA provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.

223.   The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs Altier and Sacchetti and members of the California Sub-Class purchased or leased their Class Vehicles.

224.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs Altier and Sacchetti and members of the California Sub-Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle

Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiffs Altier and Sacchetti and members of the California Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiffs Altier and Sacchetti and members of the California Sub-Class.

225. Because of the ACU Defect, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

226. Plaintiffs Altier and Sacchetti and members of the California Sub-Class could not have reasonably discovered the ACU Defect.

227. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

228. Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacturing defects which cause airbags and safety restraints not to perform as warranted.

229. Specifically, on information and belief, Defendants breached their express warranties by: (1) knowingly providing Plaintiffs Altier and Sacchetti and members of the California Sub-Class with Class Vehicles containing defects in material that were never disclosed to Plaintiffs Altier and Sacchetti and members of the California Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that

failed to conform to the representations made by the Vehicle Manufacturer Defendants.

230.  Plaintiffs Altier and Sacchetti and members of the California Sub-Class have given Defendants a reasonable opportunity to cure their breach of express warranties or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

231.  Thus, the Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiffs Altier and Sacchetti and members of the California Sub-Class are not limited to their remedies.

232.  The Vehicle Manufacturer Defendants were provided notice of the defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the defective airbag systems and, on information and belief, have refused to repair or replace the defective airbag systems for Plaintiffs Altier and Sacchetti and members of the California Sub-Class free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

233.  Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Altier

CLASS ACTION COMPLAINT

and Sacchetti and members of the California Sub-Class. Among other things, Plaintiffs Altier and Sacchetti and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and members of the California Sub-Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

234.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Altier and Sacchetti and members of the California Sub-Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

235.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiffs Altier and Sacchetti and members of the California Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

236.   Plaintiffs Altier and Sacchetti and members of the California Sub-Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

237.   As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs Altier and Sacchetti and members of the California Sub-Class have been damaged in an amount to be determined at trial.

238.   Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiffs Altier and Sacchetti and members of the California Sub-Class assert, as additional and/or alternative remedies, the

revocation of acceptance of the goods and the return to Plaintiffs Altier and Sacchetti and members of the California Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT IX
### Violation of the Consumers Legal Remedies Act ("CLRA"),
### Cal. Civ. Code § 1750, *et seq.* against all Defendants
### (On behalf of the California Sub-Class)

239.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

240.   Plaintiffs Altier and Sacchetti bring this count on behalf of themselves and the members of the California Sub-Class against all Defendants.

241.   The Class Vehicles and ACUs are "goods" as defined in Cal. Civ. Code § 1761(a).

242.   Plaintiffs Altier and Sacchetti, the California Sub-Class, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

243.   Plaintiffs Altier and Sacchetti and the California Sub-Class are "consumers" as defined in Cal. Civ. Code § 1761(d).

244.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]"  Cal. Civ. Code § 1770(a).

245.   Defendants have engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, *et seq.*, as described above and below, by among other things, representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; and

representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not.

246.   In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.

247.   Defendants also engaged in unlawful trade practices by representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and omitting material facts in describing them. Defendants are directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA.

248.   Defendants have known of the ACU Defect in its defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

249.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the CLRA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

250.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiffs Altier and Sacchetti and members of the California Sub-Class.

CLASS ACTION COMPLAINT

251. Defendants knew or should have known that their conduct violated the CLRA.

252. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

253. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

254. Defendants owed Plaintiffs Altier and Sacchetti and members of the California Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

   a. Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

   b. Intentionally concealed the foregoing from Plaintiffs; and/or

   c. Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

255. The Class Vehicles and/or the defective airbag systems installed in them posed and/or pose an unreasonable risk of death or serious bodily injury to Plaintiffs Altier and Sacchetti and members of the California Sub-Class, passengers, other motorists, pedestrians, and the public at large, because the defective airbag systems are inherently defective and dangerous in that the defective airbag systems fail to deploy during accidents.

256.   Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiffs Altier and Sacchetti and members of the California Sub-Class, about the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiffs Altier and Sacchetti and members of the California Sub-Class.

257.   Defendants' failure to disclose, and active concealment of, the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiffs Altier and Sacchetti and members of the California Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

258.   Defendants' violations present a continuing risk to Plaintiffs Altier and Sacchetti and members of the California Sub-Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest, and trade and commerce in the State of California.

259.   Defendant's violations of the CLRA were willful and oppressive.

260.   Plaintiffs Altier and Sacchetti and members of the California Sub-Class, demand judgment against Defendants under the CLRA for an injunction requiring Defendants to adequately and permanently repair the Class Vehicles and/or the defective airbag systems installed in them, or provide a suitable alternative, free of charge, and an award of attorneys' fees pursuant to Civil Code § 1780(d). Plaintiff Altier and members of the California Sub-Class seek this injunctive relief for Defendants' myriad violations of the CLRA, including Cal. Civ. Code §§ 1770(a)(5), (7), and (9).

261.   In accordance with section 1782(a) of the CLRA, Plaintiffs Altier and Sacchetti's counsel, on behalf of Plaintiffs, will serve Defendants with notice of their

CLASS ACTION COMPLAINT

alleged violations of California Civil Code § 1770(a) relating to the Class Vehicles and/or the defective airbag systems installed in them purchased by Plaintiffs Altier and Sacchetti and members of the California Sub-Class, and demand that Defendants correct or agree to correct the actions described therein. If Defendants fail to do so, Plaintiffs Altier and Sacchetti and members of the California Sub-Class will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs Altier and Sacchetti and members of the California Sub-Class are entitled.

### COUNT X
### Violation of Unfair Competition Law (the "UCL"),
### Cal. Bus. & Prof. Code § 17200 *et seq.*, against all Defendants
### (On behalf of the California Sub-Class)

262.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

263.   Plaintiffs Altier and Sacchetti bring this count on behalf of themselves and the members of the California Sub-Class against all Defendants.

264.   Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."  Defendants engaged in conduct that violated all three prongs of this statute.

265.   Defendants committed an unlawful business act or practice in violation of § 17200 by their violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as set forth above, by the acts and practices set forth in this Complaint.

266.   Defendants committed unfair business acts and practices in violation of § 17200 when they concealed the existence and nature of the ACU Defect, dangers, and risks posed by the Class Vehicles and/or the defective airbag systems installed in them. Defendants represented that the Class Vehicles and/or the defective airbag systems installed in them were reliable and safe when, in fact, they are not.

CLASS ACTION COMPLAINT

267. Defendants violated the fraudulent prong of § 17200 because the misrepresentations and omissions regarding the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

268. Defendants committed fraudulent business acts and practices in violation of § 17200 when they concealed the existence and nature of the ACU Defect, dangers, and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, while representing in their marketing, advertising, and other broadly disseminated representations that the Class Vehicles and/or the defective airbag systems installed in them were reliable and safe when, in fact, they are not. Defendants' active concealment of the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them are likely to mislead the public with regard to their true defective nature.

269. Defendants have violated the unfair prong of § 17200 because of the acts and practices set forth in the Complaint, including the manufacture and sale of Class Vehicles and/or the defective airbag systems installed in them, and Defendants' failure to adequately investigate, disclose and remedy, offend established public policy, and because of the harm they cause to consumers greatly outweighs any benefits associated with those practices. Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs Altier and Sacchetti and members of the California Sub-Class from making fully informed decisions about whether to purchase or lease Class Vehicles and/or the defective airbag systems installed in them and/or the price to be paid to purchase or lease them.

270. Plaintiffs Altier and Sacchetti and members of the California Sub-Class have suffered injuries in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. As set forth above, Plaintiffs Altier and Sacchetti and members of the California Sub-Class, in

CLASS ACTION COMPLAINT

purchasing or leasing Class Vehicles with the defective airbag systems installed in them, relied on the misrepresentations and/or omissions of Defendants with respect of the safety and reliability of the vehicles. Had Plaintiffs Altier and Sacchetti and members of the California Sub-Class known the truth, they would not have purchased or leased their vehicles and/or paid as much for them.

271.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated.

272.   As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs Altier and Sacchetti and members of the California Sub-Class have suffered and will continue to suffer actual damages.

273.   Plaintiffs Altier and Sacchetti and members of the California Sub-Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203; and for such other relief set forth below.

274.   Plaintiffs Altier and Sacchetti and members of the California Sub-Class also request equitable and injunctive relief in the form of Court supervision of Defendants' numerous recalls of the various Class Vehicles and/or the defective airbag systems installed in them, to ensure that all affected vehicles are recalled and that the recalls properly and adequately cure the dangers and risks posed.

## COUNT XI
**Illinois Consumer Fraud and Deceptive Business Practices**
**815 ILL. COMP. STAT. § 505/1, *et seq*., against all Defendants**
**(On behalf of the Illinois Sub-Class)**

275.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

CLASS ACTION COMPLAINT

276.   Plaintiff Swanson brings this count on behalf of herself and the members of the Illinois Sub-Class against all Defendants.

277.   Defendants are "persons" within the context of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.* (hereinafter "Illinois CFA"), specifically 815 Ill. Comp. Stat. § 505/1(c).

278.   Plaintiff Swanson and members of the Illinois Sub-Class are "consumers" within the meaning of 815 Ill. Comp. Stat. § 505/1(e).

279.   The Illinois CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. § 505/2.

280.   In violation of the Illinois CFA, Defendants engaged in misleading, false, or deceptive practices by misrepresenting the standard, quality, or grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the defect in the Defective ACUs and corresponding safety risk.

281.   Defendants engaged in deceptive business practices prohibited by the Illinois CFA by willfully failing to disclose and actively concealing the defectively designed Defective ACU discussed herein and otherwise engaging in activities with a tendency or capacity to deceive.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

282.   At the time Plaintiff Swanson purchased her Class Vehicle, Defendants knew, or should have known, that the Defective ACUs in the Class Vehicles could

CLASS ACTION COMPLAINT

cause the airbags not to deploy in a severe collision. Further, Defendants knew, or should have known, that such failure could dramatically increase the risk of injury to vehicle operators and passengers in the event of an accident.

283. Defendants knowingly concealed, suppressed, and/or omitted the existence of the defect in the Defective ACUs and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter. Defendants failed to inform Plaintiff Swanson or members of the Illinois Sub-Class of the Defective ACU in the Class Vehicles at the time of purchase or thereafter, and neither Plaintiff Swanson nor members of the Illinois Sub-Class had independent knowledge that the Class Vehicles incorporate Defective ACUs.

284. Defendants intended that Plaintiff Swanson and members of the Illinois Sub-Class would, in the course of their decision to expend monies in purchasing, leasing, and/or repairing Class Vehicles, reasonably rely upon Defendants' misrepresentations, misleading characterizations, and material omissions concerning the quality of Class Vehicles with respect to materials, workmanship, design, and/or manufacture.

285. Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Swanson and members of the Illinois Sub-Class. When Plaintiff Swanson and members of the Illinois Sub-Class purchased or leased their Class Vehicles or within the applicable warranty periods, they reasonably relied on the reasonable expectation that the Class Vehicles' Defective ACUs would function properly and cause the airbags to deploy in a collision, would not require repair or replacement, and/or would not pose an unavoidable safety risk.

286. Had Defendants disclosed that the Defective ACUs were prone to failure and/or posed an unavoidable safety risk, Plaintiff Swanson and members of the Illinois Sub-Class would not have purchased or leased the Class Vehicles, would have paid less for their vehicles, or would have had the Defective ACUs replaced free of charge within the applicable warranty periods. Further, had Defendants disclosed

CLASS ACTION COMPLAINT

that the Defective ACUs in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiff Swanson and members of the Illinois Sub-Class would have demanded repair or replacement during the warranty periods at no cost to Plaintiff Swanson or members of the Illinois Sub-Class—as provided for in Defendants' warranties.

287.   Defendants fraudulently concealed the existence of the defect in the Defective ACUs and safety risk in the Class Vehicles within the express warranty period.

288.   Defendants violated the Illinois CFA by failing to inform Class Vehicle owners and lessees prior to purchase or lease and/or during the warranty period that the Defective ACUs were defectively designed and/or manufactured.

289.   Defendants violated the Illinois CFA by failing to inform Class Vehicle owners and lessees prior to purchase or lease and/or during the warranty period that Class Vehicles contained the Defective ACUs.

290.   Defendants committed acts constituting unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the Illinois CFA through a continuous course of conduct, which included deceptive acts, omissions of material fact, and misrepresentations concerning, *inter alia*, the safety risk posed by the defect and the monetary cost of repair due to the Defective ACUs in Class Vehicles owned by Plaintiff Swanson and members of the Illinois Sub-Class.

291.   As a proximate and direct result of Defendants' unfair and deceptive trade practices in violation of the Illinois CFA, Plaintiff Swanson and members of the Illinois Sub-Class have suffered and continue to suffer harm by being deprived of the benefit of the bargain when the Class Vehicles were purchased or leased and from the eventual cost of repair or replacement of the Defective ACUs, actual damages to be determined at trial.  Plaintiff Swanson and members of the Illinois Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

CLASS ACTION COMPLAINT

292.   The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive, and/or unscrupulous and caused unavoidable and substantial injury to Class Vehicle owners and lessees (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

293.   As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiff Swanson and the Illinois Sub-Class have suffered injury-in-fact and/or actual damages because they did not receive the benefit of the bargain when purchasing or leasing their Class Vehicles, overpaid for those Class Vehicles, and have suffered the ascertainable loss of the subsequent diminution of value of their Class Vehicles.

294.   Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff Swanson and the Illinois Sub-Class seek monetary relief against Defendants in the amount of actual damages, as well as punitive damages, as Defendants acted with fraud and/or malice and/or were grossly negligent.

295.   Plaintiff Swanson and the Illinois Sub-Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1 *et seq.*

**COUNT XII**
**Illinois Breach of Implied Warranty of Merchantability,**
**810 ILL. COMP. STAT. §§ 5/2-314, 5/2-315, and 5/2A-212,**
**against all Defendants**
**(On behalf of the Illinois Sub-Class)**

296.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

297.   Plaintiff Swanson brings this count on behalf of herself and the members of the Illinois Sub-Class against all Defendants.

CLASS ACTION COMPLAINT

298.   Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of the Class Vehicles under § 5/2-103(1)(d).

299.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

300.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. § 5/2-105(1) and 5/2A-103(1)(h).

301.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 810 Ill. Comp. Stat. § 5/2-314 and 5/2A-212.

302.   In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law pursuant to 810 Ill. Comp. Stat. § 5/2-315. Defendants knew at the time of sale of the Class Vehicles that Plaintiff Swanson and the Illinois Sub-Class intended to use the vehicles in a manner requiring a particular standard of performance and safety, and that Plaintiff Swanson and the Illinois Sub-Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

303.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect in the Defective ACUs (present at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

304.   Defendants were provided notice of the issues raised in this count and this Complaint as detailed above.

305.   Defendants cannot disclaim their implied warranties as they knowingly sold or leased a defective product.

68                    CLASS ACTION COMPLAINT

306.   Defendants were provided notice of the defect in the Defective ACUs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing and research.   Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the defect in the Defective ACUs and, on information and belief, have refused to repair or replace the Defective ACUs free of charge within or outside of the warranty periods despite the defect's existence—and Defendants' knowledge thereof—at the time of sale or lease of the Class Vehicles.

307.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Swanson and members of the Illinois Sub-Class have been damaged in an amount to be proven at trial.

308.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Swanson and members of the Illinois Sub-Class.   Among other things, Plaintiff Swanson and members of the Illinois Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.   A gross disparity in bargaining power existed between Defendants and members of the Illinois Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective ACUs were defective and posed a safety risk during the applicable warranty periods.

309.   Further, as manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

69

310.   Plaintiff Swanson and members of the Illinois Sub-Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

311.   The Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of life-saving airbags failing to deploy in a severe collision.  Defendants are estopped by their conduct, as alleged herein, from disclaiming any and all implied warranties with respect to the Defective ACUs in Class Vehicles.

312.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

**COUNT XIII**
**Massachusetts Breach of Implied Warranty of Merchantability,**
**(Mass. Gen. Laws c. 106 §§ 2-314 and 2A-212), against all Defendants**
**(On behalf of the Massachusetts Sub-Class)**

313.   Plaintiff Santos-Silva incorporates and re-alleges each preceding paragraph as though fully set forth herein.

314.   Plaintiff Santos-Silva brings this count on behalf of himself and the members of the Massachusetts Sub-Class against all Defendants.

315.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or airbags under M.G.L. c. 106 § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

316.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under M.G.L. c. 106 § 2A-103(1)(p).

317.   The Class Vehicles and airbags are and were at all relevant times "goods" within the meaning of G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

CLASS ACTION COMPLAINT

318.   A warranty that the Class Vehicles and/or the defective airbag systems installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

319.   The Class Vehicles and/or the defective airbag systems installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the defective airbag systems fail to deploy during accidents.

320.   Defendants were provided notice of these issues by their knowledge of the issues, by numerous complaints filed against them and/or others, and by internal and NHTSA investigations.

321.   As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Massachusetts Sub-Class have been damaged in an amount to be proven at trial.

**COUNT XIV**
**Massachusetts Breach of Express Warranty,**
**Mass. Gen. Laws C. 106 §§ 2-313 and 2A-210**
**against the Vehicle Manufacturer Defendants**
**(On behalf of the Massachusetts Sub-Class)**

322.   Plaintiff Santos-Silva incorporates and re-alleges each preceding paragraph as though fully set forth herein.

323.   Plaintiff Santos-Silva brings this count on behalf of himself and the members of the Massachusetts Sub-Class against the Vehicle Manufacturer Defendants.

324.   The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under M.G.L. c. 106 § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

CLASS ACTION COMPLAINT

325.   With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under M.G.L. c. 106 § 2A-103(1)(p).

326.   The Class Vehicles are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

327.   In connection with the purchase or lease of each one of its new vehicles, the Vehicle Manufacturer Defendants provide express warranties.  Kia provides a limited basic warranty for a period of 5 years or 60,000 miles, whichever occurs first and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  FCA provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.

328.   The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Santos-Silva and members of the Massachusetts Sub-Class purchased or leased their Class Vehicles.

329.   The ACU Defect in the defective airbag system systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Santos-Silva and members of the Massachusetts Sub-Class had no knowledge of the existence of the defect, which was known and concealed by the

Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff Santos-Silva and members of the Massachusetts Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff Santos-Silva and members of the Massachusetts Sub-Class.

330.   Because of the ACU Defect, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

331.   Plaintiff Santos-Silva and members of the Massachusetts Sub-Class could not have reasonably discovered the ACU Defect.

332.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied.

333.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacturing defects which cause airbags and other safety restrains not to perform as warranted.

334.   Specifically, on information and belief, Defendants breached their express warranties by: (1) knowingly providing Plaintiff Santos-Silva and members of the Massachusetts Sub-Class with Class Vehicles containing defects in materials, workmanship, and manufacturing that were never disclosed to Plaintiff Santos-Silva and members of the Massachusetts Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products

and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

335.  Plaintiff Santos-Silva and members of the Massachusetts Sub-Class have given Defendants a reasonable opportunity to cure their breaches of express warranties or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

336.  Thus, the Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff Santos-Silva and members of the Massachusetts Sub-Class are not limited to their remedies.

337.  The Vehicle Manufacturer Defendants were provided notice of the defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the defective airbag systems and, on information and belief, have refused to repair or replace the defective airbag systems for Plaintiff Santos-Silva and members of the Massachusetts Sub-Class free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

338.  Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Santos-

Silva and members of the Massachusetts Sub-Class. Among other things, Plaintiff Santos-Silva and the members of the Massachusetts Sub-Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff Santos-Silva and members of the Massachusetts Sub-Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

339. Further, the limited warranties promising to repair and/or correct a manufacturing defect fails in their essential purpose because the contractual remedy is insufficient to make Plaintiff Santos-Silva and members of the Massachusetts Sub-Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

340. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Santos-Silva and members of the Massachusetts Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

341. Plaintiff Santos-Silva and members of the Massachusetts Sub-Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

342. As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff Santos-Silva and members of the Massachusetts Sub-Class have been damaged in an amount to be determined at trial.

343. Finally, because of the Vehicle Manufacturer Defendants' breaches of express warranties as set forth herein, Plaintiff Santos-Silva and members of the Massachusetts Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Santos-Silva and

75

members of the Massachusetts Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and request such other incidental and consequential damages as allowed.

## COUNT XV
### Deceptive Acts or Practices Prohibited by Massachusetts Law
### Mass. Gen. Laws Ch. 93A, §§ 1, *et seq.*, against all Defendants
### (On behalf of the Massachusetts Sub-Class)

344.   Plaintiff Santos-Silva incorporates and re-alleges each preceding paragraph as though fully set forth herein.

345.   Plaintiff Santos-Silva brings this count on behalf of himself and the members of the Massachusetts Sub-Class against all Defendants.

346.   Plaintiff Santos-Silva and the Massachusetts Sub-Class are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

347.   Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws 93A, § 1(b).

348.   Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.  Defendants participated in misleading, false, or deceptive acts that violated the Massachusetts Act. By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them, Defendants engaged in deceptive business practices prohibited by the Massachusetts Act.

349.   Defendants engaged in deceptive trade practices that violated the Massachusetts Act, including: knowingly representing that Class Vehicles and/or the defective airbag systems installed in them have uses and benefits which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving them has been supplied in

CLASS ACTION COMPLAINT

1    accordance with a previous representation when it has not; and knowingly making

2    other false representations in a transaction.

3        350.   Defendants' actions as set forth above occurred in the conduct of trade

4    or commerce.

5        351.   In the course of their business, Defendants failed to disclose and actively

6    concealed the dangers and risks posed by the Class Vehicles and/or the defective

7    airbag systems installed in them as described herein and otherwise engaged in

8    activities with a tendency or capacity to deceive. Defendants also engaged in

9    unlawful trade practices by employing deception, deceptive acts or practices, fraud,

10   misrepresentations, or concealment, suppression or omission of any material fact with

11   intent that others rely upon such concealment, suppression or omission, in connection

12   with the sale of the Class Vehicles and/or the defective airbag systems installed in

13   them.

14       352.   Defendants have known of the ACU Defect in its defective airbag

15   systems and failed to disclose and actively concealed the dangers and risks posed by

16   the Class Vehicles and/or the defective airbag systems installed in them.

17       353.   By failing to disclose and by actively concealing the ACU Defect in the

18   Class Vehicles and/or the defective airbag systems installed in them, by marketing

19   them as safe, reliable, and of high quality, and by presenting themselves as reputable

20   manufacturers that value safety, Defendants engaged in unfair or deceptive business

21   practices in violation of the Massachusetts Act. Defendants deliberately withheld the

22   information about the propensity of the defective airbag systems to fail to deploy

23   during an accident, in order to ensure that consumers would purchase the Class

24   Vehicles.

25       354.   In the course of Defendants' business, they willfully failed to disclose

26   and actively concealed the dangerous risks posed by the many safety issues and

27   serious defect discussed above. Defendants compounded the deception by repeatedly

28   asserting that the Class Vehicles and/or the defective airbag systems installed in them

CLASS ACTION COMPLAINT

were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

355. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Santos-Silva and members of the Massachusetts Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

356. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff Santos-Silva and members of the Massachusetts Sub-Class.

357. Defendants knew or should have known that their conduct violated the Massachusetts Act.

358. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

359. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers, including Plaintiffs and Class Members to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

360. Defendants owed Plaintiff Santos-Silva and members of the Massachusetts Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

CLASS ACTION COMPLAINT

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

361.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

362.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff Santos-Silva and members of the Massachusetts Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

363.   Plaintiff Santos-Silva and members of the Massachusetts Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff Santos-Silva and members of the Massachusetts Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all.   Plaintiff Santos-Silva and members of the

CLASS ACTION COMPLAINT

Massachusetts Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

364.   Defendants' violations present a continuing risk to Plaintiff Santos-Silva and members of the Massachusetts Sub-Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

365.   As a direct and proximate result of Defendants' violations of the Massachusetts Act, Plaintiff Santos-Silva and members of the Massachusetts Sub-Class have suffered injury-in-fact and/or actual damage.

366.   Accordingly, Plaintiff Santos-Silva and members of the Massachusetts Sub-Class seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under Mass. Gen. Laws ch. 93A, § 9.

## COUNT XVI
### Nevada Breach of Implied Warranty of Merchantability, Nev. Rev. Stat. § 104.2314, against all Defendants (On behalf of the Nevada Sub-Class)

367.   Plaintiff Baerresen incorporates and re-alleges each preceding paragraph as though fully set forth herein.

368.   Plaintiff Baerresen brings this count on behalf of himself and the members of the Nevada Sub-Class against all Defendants.

369.   Defendants are and were at all relevant times merchants with respect to motor vehicles and/or airbags within the meaning of Nev. Rev. Stat. § 104.2104(1).

370.   A warranty that the Class Vehicles and/or the defective airbag systems installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Nev. Rev. Stat. § 104.2314.

371.   The Class Vehicles and/or the defective airbag systems installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the

ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the defective airbag systems fail to deploy during accidents.

372.   Defendants were provided notice of these issues by their knowledge of the issues, by numerous complaints filed against them and/or others, and by internal and NHTSA investigations.

373.   As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Nevada Sub-Class have been damaged in an amount to be proven at trial.

**COUNT XVII**
**Nevada Breach of Express Warranty,**
**Nev. Rev. Stat. §§ 104.2313 and 104A.2210**
**against the Vehicle Manufacturer Defendants**
**(On behalf of the Nevada Sub-Class)**

374.   Plaintiff Baerresen incorporates and re-alleges each preceding paragraph as though fully set forth herein.

375.   Plaintiff Baerresen brings this count on behalf of himself and the members of the Nevada Sub-Class against the Vehicle Manufacturer Defendants.

376.   The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.R.S. § 104.2104(1) and 2A103(a), and "sellers" of motor vehicles under § 104.2103(1)(c).

377.   With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

378.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

379.   In connection with the purchase or lease of each one of its new vehicles, the Vehicle Manufacturer Defendants provide express warranties. Kia provides a limited basic warranty for a period of 5 years or 60,000 miles, whichever occurs first

and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. FCA provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.

380. The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Baerresen and members of the Nevada Sub-Class purchased or leased their Class Vehicles.

381. The ACU Defect in the defective airbag system systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Baerresen and members of the Nevada Sub-Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff Baerresen and members of the Nevada Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff Baerresen and members of the Nevada Sub-Class.

CLASS ACTION COMPLAINT

382.   Because of the ACU Defect, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

383.   Plaintiff Baerresen and members of the Nevada Sub-Class could not have reasonably discovered the ACU Defect.

384.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied.

385.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacturing defects which cause airbags and safety restraints not to perform as warranted.

386.   Specifically, on information and belief, Defendants breached their express warranties by: (1) knowingly providing Plaintiff Baerresen and members of the Nevada Sub-Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff Baerresen and members of the Nevada Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

387.   Plaintiff Baerresen and members of the Nevada Sub-Class have given Defendants a reasonable opportunity to cure their breach of express warranties or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants

83                                    CLASS ACTION COMPLAINT

1   can neither cure the defect in the Class Vehicles nor resolve the incidental and

2   consequential damages flowing therefrom.

3       388.   Thus, the Vehicle Manufacturer Defendants' written warranties fail of

4   their essential purpose and the recovery of Plaintiff Baerresen and members of the

5   Nevada Sub-Class are not limited to their remedies.

6       389.   The Vehicle Manufacturer Defendants were provided notice of the

7   defect in the defective airbag systems by numerous consumer complaints made to

8   their authorized dealers nationwide, complaints to NHTSA, and through their own

9   testing.   Affording Defendants a reasonable opportunity to cure their breach of

10  written warranties would be unnecessary and futile here because the Vehicle

11  Manufacturer Defendants have known of and concealed the defective airbag systems

12  and, on information and belief, have refused to repair or replace the defective airbag

13  systems for Plaintiff Baerresen and members of the Nevada Sub-Class free of charge

14  within or outside of the warranty periods despite the defect's existence at the time of

15  sale or lease of the Class Vehicles, and within the applicable warranty periods.

16      390.   Any attempt by Defendants to disclaim or limit recovery to the terms of

17  the express warranties is unconscionable and unenforceable here. Specifically, the

18  Vehicle Manufacturer Defendants' warranty limitations are unenforceable because

19  they knowingly sold or leased defective products without informing consumers about

20  the defect. The time limits contained in the Vehicle Manufacturer Defendants'

21  warranty periods were also unconscionable and inadequate to protect Plaintiff

22  Baerresen and members of the Nevada Sub-Class. Among other things, Plaintiff

23  Baerresen and the members of the Nevada Sub-Class did not determine these time

24  limitations, the terms of which unreasonably favored the Vehicle Manufacturer

25  Defendants. A gross disparity in bargaining power existed between the Vehicle

26  Manufacturer Defendants and Plaintiff Baerresen and members of the Nevada Sub-

27  Class, and the Vehicle Manufacturer Defendants knew or should have known that the

28

Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

391.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Baerresen and members of the Nevada Sub-Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

392.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Baerresen and members of the Nevada Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

393.   Plaintiff Baerresen and members of the Nevada Sub-Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

394.   As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff Baerresen and members of the Nevada Sub-Class have been damaged in an amount to be determined at trial.

395.   Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein, Plaintiff Baerresen and members of the Nevada Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Baerresen and members of the Nevada Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and request such other incidental and consequential damages as allowed.

CLASS ACTION COMPLAINT

**COUNT XVIII**
**Violation of the Nevada Deceptive Trade Practices Act,**
**Nev. Rev. Stat. §§ 598.0903, *et seq.* against all Defendants**
**(On behalf of the Nevada Sub-Class)**

396.   Plaintiff Baerresen incorporates and re-alleges each preceding paragraph as though fully set forth herein.

397.   Plaintiff Baerresen brings this count on behalf of himself and the members of the Nevada Sub-Class against all Defendants.

398.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade,  or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

399.   Defendants engaged in deceptive trade practices that violated the Nevada DTPA, including: knowingly representing that Class Vehicles and/or the defective airbag systems installed in them have uses and benefits which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

CLASS ACTION COMPLAINT

400.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

401.   In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the defective airbag systems installed in them.

402.   Defendants have known of the ACU Defect in its defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

403.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Nevada DTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

404.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

CLASS ACTION COMPLAINT

405. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Baerresen and members of the Nevada Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

406. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff Baerresen and members of the Nevada Sub-Class.

407. Defendants knew or should have known that their conduct violated the Nevada DTPA.

408. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

409. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

410. Defendants owed Plaintiff Baerresen and members of the Nevada Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

a. Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b. Intentionally concealed the foregoing from Plaintiffs; and/or

88

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

411. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

412. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff Baerresen and members of the Nevada Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

413. Plaintiff Baerresen and members of the Nevada Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff Baerresen and members of the Nevada Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff Baerresen and members of the Nevada Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

CLASS ACTION COMPLAINT

414.   Defendants' violations present a continuing risk to Plaintiff Baerresen and members of the Nevada Sub-Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

415.   As a direct and proximate result of Defendants' violations of the Nevada DTPA, Plaintiff Baerresen and members of the Nevada Sub-Class have suffered injury-in-fact and/or actual damage.

416.   Accordingly, Plaintiff Baerresen and members of the Nevada Sub-Class seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act. Nev. Rev. Stat. § 41.600.

**COUNT XIX**
**New York Breach of Implied Warranty of Merchantability,**
**(N.Y. U.C.C. Law §§ 2-314 and 2A-212), against all Defendants**
**(On behalf of the New York Sub-Class)**

417.   Plaintiff Fishon incorporates and re-alleges each preceding paragraph as though fully set forth herein.

418.   Plaintiff Fishon brings this count on behalf of himself and the members of the New York Sub-Class against all Defendants.

419.   Defendants are and were at all relevant times merchants with respect to motor vehicles and/or airbags under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

420.   The Class Vehicles and airbags are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

421.   A warranty that the Class Vehicles and/or the defective airbag systems installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

CLASS ACTION COMPLAINT

422.   The Class Vehicles and/or the defective airbag systems installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the defective airbag systems fail to deploy during accidents.

423.   Defendants were provided notice of these issues by their knowledge of the issues, by numerous complaints filed against them and/or others, and by internal and NHTSA investigations.

424.   As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff Fishon and members of the New York Sub-Class have been damaged in an amount to be proven at trial.

**COUNT XX**
**New York Breach of Express Warranty,**
**N.Y. U.C.C. Law §§ 2-313 and 2A-210)**
**against the Vehicle Manufacturer Defendants**
**(On behalf of the New York Sub-Class)**

425.   Plaintiff Fishon incorporates and re-alleges each preceding paragraph as though fully set forth herein.

426.   Plaintiff Fishon brings this count on behalf of himself and the members of the New York Sub-Class against the Vehicle Manufacturer Defendants.

427.   The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

428.   With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

429.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

CLASS ACTION COMPLAINT

430.   In connection with the purchase or lease of each one of its new vehicles, the Vehicle Manufacturer Defendants provide express warranties.  Kia provides a limited basic warranty for a period of 5 years or 60,000 miles, whichever occurs first and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  FCA provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.

431.   The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Fishon and members of the New York Sub-Class purchased or leased their Class Vehicles.

432.   The ACU Defect in the defective airbag system systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Fishon and members of the New York Sub-Class had no knowledge of the existence of the defect, which was known to and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff Fishon and members of the New York Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of

CLASS ACTION COMPLAINT

the defective airbag systems to Plaintiff Fishon and members of the New York Sub-Class.

433.   Because of the ACU Defect, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

434.   Plaintiff Fishon and members of the New York Sub-Class could not have reasonably discovered the ACU Defect.

435.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

436.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause airbags that do not perform as warranted.

437.   Specifically, on information and belief, Defendants breached their express warranties by: (1) knowingly providing Plaintiff Fishon and members of the New York Sub-Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff Fishon and members of the New York Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

438.   Plaintiff Fishon and members of the New York Sub-Class have given Defendants a reasonable opportunity to cure their breach of express warranties or, alternatively, were not required to do so because such an opportunity would be

unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

439. Thus, the Vehicle Manufacturer Defendants' written warranties fail of its essential purpose and the recovery of Plaintiff Fishon and members of the New York Sub-Class are not limited to its remedies.

440. The Vehicle Manufacturer Defendants were provided notice of the defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the defective airbag systems and, on information and belief, have refused to repair or replace the defective airbag systems for Plaintiff Fishon and members of the New York Sub-Class free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

441. Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Fishon and members of the New York Sub-Class. Among other things, Plaintiff Fishon and the members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff Fishon and members of the New York Sub-Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were

CLASS ACTION COMPLAINT

defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

442.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff Fishon and members of the New York Sub-Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

443.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Fishon and members of the New York Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

444.   Plaintiff Fishon and members of the New York Sub-Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

445.   As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff Fishon and members of the New York Sub-Class have been damaged in an amount to be determined at trial.

446.   Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiff Fishon and members of the New York Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Fishon and members of the New York Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and request such other incidental and consequential damages as allowed.

CLASS ACTION COMPLAINT

**COUNT XXI**
**Violation of the New York General Business Law**
**N.Y. Gen. Bus. Law § 349, against all Defendants**
**(On behalf of the New York Sub-Class)**

447.   Plaintiff Fishon incorporates and re-alleges each preceding paragraph as though fully set forth herein.

448.   Plaintiff Fishon brings this count on behalf of himself and the members of the New York Sub-Class against all Defendants.

449.   Plaintiffs and New York Sub-Class are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

450.   Defendants are "persons," "firms," "corporations," or "associations" within the meaning of N.Y. Gen. Bus. Law § 349.

451.   The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

452.   Defendants engaged in deceptive trade practices that violated the New York GBL, including: knowingly representing that Class Vehicles and/or the defective airbag systems installed in them have uses and benefits which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

453.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

454.   In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein and otherwise engaged in

96

activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the defective airbag systems installed in them.

455.   Defendants have known of the ACU Defect in its defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

456.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the New York GBL. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

457.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

458.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Fishon and members of the New York Sub-Class, about the true safety and reliability of Class

Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

459.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff Fishon and members of the New York Sub-Class.

460.   Defendants knew or should have known that their conduct violated the New York GBL.

461.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

462.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

463.   Defendants owed Plaintiff Fishon and members of the New York Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

CLASS ACTION COMPLAINT

464.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

465.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff Fishon and members of the New York Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

466.   Plaintiff Fishon and members of the New York Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff Fishon and members of the New York Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff Fishon and members of the New York Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

467.   Defendants' violations present a continuing risk to Plaintiff Fishon and members of the New York Sub-Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

468.   As a direct and proximate result of Defendants' violations of the New York GBL, Plaintiff Fishon and members of the New York Sub-Class have suffered injury-in-fact and/or actual damage.

CLASS ACTION COMPLAINT

469.   Accordingly, Plaintiff Fishon and members of the New York Sub-Class seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the N.Y. Gen. Bus. Law § 349.

**COUNT XXII**
**Violation of the New York General Business Law**
**N.Y. Gen. Bus. Law § 350, against all Defendants**
**(On behalf of the New York Sub-Class)**

470.   Plaintiff Fishon incorporates and re-alleges each preceding paragraph as though fully set forth herein.

471.   Plaintiff Fishon brings this count on behalf of himself and the members of the New York Sub-Class against all Defendants.

472.   Defendants were and are engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

473.   N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

474.   Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to Plaintiff Fishon and the New York Sub-Class.

475.   Defendants have violated § 350 because the misrepresentations and omissions regarding the ACU Defect, and Defendants' failure to disclose and active concealing of the dangers and risks posed by the Class Vehicles and/or the Defective

CLASS ACTION COMPLAINT

ACUs installed in them, as set forth above, were material and likely to deceive a reasonable consumer.

476.   Plaintiff Fishon and New York Sub-Class members have suffered an injury, including the loss of money or property, as a result of Defendants' false advertising. In purchasing or leasing Class Vehicles with the Defective ACUs installed in them, Plaintiff Fishon and the New York Sub-Class relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them. Defendants' representations were false and/or misleading because the concealed the ACU Defect and safety issues seriously undermine the value of the Class Vehicles. Had Plaintiff Fishon and the New York Sub-Class known this, they would not have purchased or leased their vehicles and/or paid as much for them.

477.   Pursuant to N.Y. Gen. Bus. Law § 350 e, Plaintiff Fishon and the New York Sub-Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for New York Sub-Class member. Because Defendants' conduct was committed willfully and knowingly, Plaintiff Fishon and New York sub-class members are entitled to recover three times actual damages, up to $10,000, for each New York Class member.

478.   Plaintiff Fishon and the New York Sub-Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law § 350.

## COUNT XXIII
### Violation of the Consumer Protection Act
### Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*, against all Defendants
### (On behalf of the Washington Sub-Class)

479.   Plaintiff Jagnjic incorporates and re-alleges each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT

480.   Plaintiff Jagnjic brings this count on behalf of himself and the members of the Washington Sub-Class against all Defendants.

481.   Defendants committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code Ann. § 19.96.010.

482.   The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."   Wash. Rev. Code Ann. § 19.96.010. Defendants engaged in unfair and deceptive acts and practices and violated the Washington CPA by failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the Defective ACUs installed in them.

483.   In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective ACUs installed in them.

484.   Defendants were provided notice of the defect in the Defective ACUs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing and research.   Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the defect in the Defective ACUs and, on information and belief, have refused to repair or replace the Defective ACUs free of charge within or outside of the warranty periods despite the defect's existence—and Defendants' knowledge thereof—at the time of sale or lease of the Class Vehicles.

CLASS ACTION COMPLAINT

485.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the Defective ACUs installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Washington CPA.   Defendants deliberately failed to disclose that the Defective ACU's in Class Vehicles could cause the airbags not to deploy in a severe collision, instead of causing the airbags to inflate and protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

486.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.   Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective ACUs installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

487.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Jagnjic and the Washington Sub-Class, about the true safety and reliability of Class Vehicles and/or the Defective ACUs installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

488.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective ACUs installed in them with an intent to mislead Plaintiff Jagnjic and the Washington Sub-Class.

489.   Defendants knew or should have known that their conduct violated the Washington CPA.

CLASS ACTION COMPLAINT

490.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them that were either false or misleading.

491.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

492.   Defendants owed Plaintiff Jagnjic and the Washington Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them because Defendants:

    a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    b.   Intentionally concealed the foregoing from Plaintiff Jagnjic and the Washington Sub-Class; and/or

    c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff Jagnjic and the Washington Sub-Class that contradicted these representations.

493.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the Defective ACUs installed in them, the value of the Class Vehicles has greatly diminished.

494.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective ACUs in Class Vehicles were material to Plaintiff Jagnjic and the Washington Sub-Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a

104                          CLASS ACTION COMPLAINT

disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

495.   Plaintiff Jagnjic and the Washington Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.   Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the Defective ACUs installed in them, and Defendants' complete disregard for safety, Plaintiff Jagnjic and the Washington Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Jagnjic and the Washington Sub-Class did not receive the benefit of their bargains as a result of Defendants' misconduct.

496.   Defendants' violations present a continuing risk to Plaintiff Jagnjic and the Washington Sub-Class, as well as to the general public.   Defendants' unlawful acts and practices complained of herein affect the public interest.

497.   As a direct and proximate result of Defendants' violations of the Washington CPA, Plaintiff Jagnjic and the Washington Sub-Class have suffered injury-in-fact and/or actual damage.

498.   Defendants are liable to Plaintiff Jagnjic and the Washington Sub-Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

## COUNT XXIV
### Breach Of Express Warranty
### Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210, against the Vehicle Manufacturer Defendants
### (On behalf of the Washington Sub-Class)

499.   Plaintiff Jagnjic incorporates and re-alleges each preceding paragraph as though fully set forth herein.

500.   Plaintiff Jagnjic brings this count on behalf of himself and the members of the Washington Sub-Class against the Vehicle Manufacturer Defendants.

CLASS ACTION COMPLAINT

501.   The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

502.   With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

503.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

504.   In connection with the purchase or lease of each one of its new vehicles, the Vehicle Manufacturer Defendants provide express warranties.  Kia provides a limited basic warranty for a period of 5 years or 60,000 miles, whichever occurs first and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  FCA provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.

505.   Accordingly, Defendants' warranties are express warranties under Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210.

CLASS ACTION COMPLAINT

506.   The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Jagnjic and members of the Washington Sub-Class purchased or leased their Class Vehicles.

507.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Jagnjic and members of the Washington Sub-Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff Jagnjic and members of the Washington Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff Jagnjic and members of the Washington Sub-Class.

508.   Because of the ACU Defect, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

509.   Plaintiff Jagnjic and members of the Washington Sub-Class could not have reasonably discovered the ACU Defect.

510.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

511.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause airbags that do not perform as warranted.

CLASS ACTION COMPLAINT

512. Specifically, on information and belief, Defendants breached their express warranties by: (1) knowingly providing Plaintiff Jagnjic and members of the Washington Sub-Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff Jagnjic and members of the Washington Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

513. Plaintiff Jagnjic and members of the Washington Sub-Class have given Defendants a reasonable opportunity to cure their breach of express warranties or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

514. Thus, the Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff Jagnjic and members of the Washington Sub-Class are not limited to their remedies.

515. The Vehicle Manufacturer Defendants were provided notice of the defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the defective airbag systems and, on information and belief, have refused to repair or replace the defective airbag systems for Plaintiff Jagnjic and members of the Washington Sub-Class free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

CLASS ACTION COMPLAINT

516.   Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Jagnjic and members of the Washington Sub-Class. Among other things, Plaintiff Jagnjic and the members of the Washington Sub-Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff Jagnjic and members of the Washington Sub-Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

517.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff Jagnjic and members of the Washington Sub-Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

518.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Jagnjic and members of the Washington Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

519.   Plaintiff Jagnjic and members of the Washington Sub-Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

CLASS ACTION COMPLAINT

520. As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff Jagnjic and members of the Washington Sub-Class have been damaged in an amount to be determined at trial.

521. Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiff Jagnjic and members of the Washington Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Jagnjic and members of the Washington Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Classes, and award the following relief:

      a.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as counsel for the Classes;

      b.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

      c.    Appropriate injunctive and equitable relief;

      d.    A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

      e.    An award returning the purchase price and monies paid for the Class Vehicles;

CLASS ACTION COMPLAINT

f. An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

g. An order awarding any applicable statutory and civil penalties;

h. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

i. An award of costs, expenses, and attorneys' fees as permitted by law; and

j. Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: May 6, 2019

By:   /s/ Robert G. Loewy
Robert G. Loewy, State Bar No. 179868
**LAW OFFICE OF**
**ROBERT G. LOEWY, P.C.**
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Tel: 949-468-7150
Fax: 949-242-5105
rloewy@rloewy.com

[*Additional counsel listed below*]

CLASS ACTION COMPLAINT

Stacey Kaplan, State Bar No. 241989
Jenny Paquette, State Bar No. 321561
**KESSLER TOPAZ**
  **MELTZER CHECK LLP**
1 Sansome Street, Suite 1850
San Francisco, CA. 94104
Tel: (415) 400-3000
skaplan@ktmc.com
jpaquette@ktmc.com

Joseph H. Meltzer
Melissa L. Troutner
Natalie Lesser
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel.:  (610) 667-7706
Fax:  (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
nlesser@ktmc.com

James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C**.
5 Becker Farm Road
Roseland, New Jersey 07068
Tel:  (973) 994-1700
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

Paul J. Geller
Mark J. Dearman
Ricardo J. Marenco
**ROBBINS GELLER**
**RUDMAN & DOWD, LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel:: (561) 750-3000

CLASS ACTION COMPLAINT

Fax: (561) 750-3364
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
rmarenco@rgrdlaw.com

Christopher A. Seeger
Christopher L. Ayers
David Buchanan
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
cayers@seegerweiss.com
dbuchanan@seegerweiss.com

***Attorneys for Plaintiffs and
the Proposed Classes***

CLASS ACTION COMPLAINT